# CHARLESTON.

## West Virginia & Maryland Power Company
### *v.*
## Racoon Valley Coal Company.

Submitted March 20, 1923.   Decided April 3, 1923.

1. Eminent Domain—*Rights of Corporation Selling Electric Current, in Exercise of Power of Eminent Domain. Stated.*

   A corporation, not a hydro-electric company, created and organized under section 2 of chapter 54 of the Code, for the purpose, among other things, of manufacturing, selling, leasing and conveying to other corporations and persons who may desire such service electric current for the purpose of lighting, heating, ventilating and power and other public purposes, is empowered by section 2 of chapter 42 of the Code, to take by condemnation a right of way, following a certain and definite course, through the lands of others, of the width of twenty-five feet in some places, or twelve and one-half feet on each side of the center line, and forty feet in other places, that is, twenty feet on each side of said center line, with the incidental right to go outside of said right of way for the distance of one hundred feet on each side of said center line to trim and cut overhanging timber or trees obstructing or in danger of obstructing its lines of transmission wires, without pointing out in advance the particular trees or timber to be so cut, and without designating the particular places for closing and opening fences across said right of way or for how long such fences may remain open,

and also without designating the size of the poles and guys, or the length and number of cross arms, the number of wires to be strung on said poles, or the voltage to be carried on such wires. (p. 511).

2.   SAME—*Demurrant, on Certification of Questions Presented. May Urge any Additional Grounds Relied on in Court Below.*

If a demurrer to the petition of such condemnor be sustained upon certain grounds, the demurrant is not confined to the particular grounds assigned by the court, but may in this court, upon a certification of the questions presented by the demurrer, urge any additional grounds relied on in the court below or properly presented by the demurrer. (p. 511).

3.   SAME—*Corporation Organized to Sell Electric Current May Condemn Right of Way.*

Such a corporation organized for the purposes set forth in plaintiff's petition is a public utility company, which without compliance with the "water power act" is subject to public control, and may by the power of eminent domain, conferred by said section 2 of chapter 42 of the Code, take by condemnation a right of way for such public use as is prescribed by that statute. (p. 513).

4.   SAME—*Petition in Condemnation of Right of Way by Corporation Selling Electric Current Held Sufficient.*

If in its petition to condemn such right of way the petitioner alleges that it was organized and is already engaged in the public service described in its petition, and that the right of way sought to have condemned is necessary and is to be devoted to such public use, the petition presents a good ground for the exercise of the right of eminent domain so conferred by law. (p. 513).

5.   SAME—*Particular Land Necessary Within Discretion of Petitioner.*

In such a proceeding to take land or a right of way over it, it is unnecessary for the petitioner to allege that it can not obtain without condemnation other or equally suitable property; what particular land is necessary for the purposes of petitioner and for the public use to which it is to be devoted is generally a matter within the discretion of the petitioner. (p. 514).

6.   SAME—*Width of Right of Way Largely Discretionary with Condemnor.*

And likewise, the width of the right of way, within such

limitation as the statute imposes, is left largely to the discretion of the condemnor.   (p. 515).

7.   SAME—*Petition to Condemn Right of Way not Demurrable for Omission to Specify Impractical Matters.*

Where the applicant in its petition and accompanying maps and other exhibits specifies the property proposed to be taken and also with reasonable certainty how the same is to be occupied, and, in the case of light and power companies, the size and location of the poles, arms and guys, the petition will not be deemed bad on demurrer for omission to specify other things which because of the exigencies which may arise would be impracticable of more definite description.   (p. 515)..

Certified Question from Circuit Court, Preston County.

Action by the West Virginia & Maryland Power Company against the Racoon Valley Coal Company.   On certified questions as to the ruling on demurrer.

*Ruling reversed, and demurrer overruled.*

*P. J. Crogan,* for plaintiff.
*F. E. Parrack,* for defendant.

MILLER, JUDGE:

Seeking to condemn a right of way through defendant's lands in Preston County, petitioner alleges that it is a public utility corporation, created, organized, operating and doing business under the laws of this State, but not a hydroelectric company, for the purpose, among other things, of manufacturing, selling, leasing and conveying to corporations and other persons who may desire such service, electric current for the purpose of heating, lighting, ventilating, power and other public purposes.

The questions certified are presented by the ruling of the circuit court sustaining defendant's demurrer to the petition. The petition further alleges that petitioner is now constructing a line of wires supported by poles, guys, braces and otherwise, through Monongalia and other counties, and especially through Valley, Kingwood and Lyon districts of Preston County, for the public purposes aforesaid, the same being

constructed and to be connected. with other power plants
in said Monongalia, Preston and other counties, for the pur-
pose of conveying power and furnishing heat and light and
for other public purposes, to divers places, persons and cor-
porations, and the public generally along said lines.

Petitioner further alleges that the right of way sought
to be acquired in this proceeding, and necessary for the pur-
poses indicated, is and will be twenty-five feet in width, that
is twelve and one-half feet on each side of the center line
thereof, as to certain distances, and forty feet in width, that
is twenty feet on each side of the center line thereof, as to
other certain distances, extending through said parcel of
land, and more particularly set out in and described on a
blue print filed with and as a part of the petition, and on
which blue print the boundaries of said parcel of land and
the names of the adjoining owners are likewise set out and
shown on said blue print; and that said easement and right
of way is more fully set out in writing fully describing the
same by metes and bounds, filed with and made a part of
petitioner's application; that in addition to the rights and
easements aforesaid, petitioner proposes to condemn the right
to cut and trim any timber on said tract of land or that may
thereafter grow upon said land, within one hundred feet
of the center line thereof, as may be necessary to protect
said transmission lines from interfering with and from falling
timber.

The petition further avers that it is the purpose of pe-
tioner to condemn an easement or right of way only, and
not the fee simple in said real estate, and furthermore that
the right is to be reserved to the present owner, its successors
and assigns; (1) to cross, re-cross, pass over and upon, use,
occupy and farm said easement or right of way continuously,
providing, however, that in so doing the use for which said
easement is to be acquired hereunder shall not be unneces-
sarily interfered with, nor the right to inspect and repair
said lines, poles and wires by the petitioner, its successors
and assigns at any time; and (2) to erect and maintain, if
they so desire, necessary fences across said right of way, but
so as not to interfere with the necessary rights and possession

of applicant, its successors and assigns, for the purposes aforesaid, the applicant to have the right to open said fences for proper purposes, but to be closed when not necessary to be opened for its proper purposes.

It is further alleged that said right of way will be used by petitioners for the purposes therein set forth and for the necessary apparatus and appliances to carry and transmit electric energy, current and power for the purposes aforesaid, and for constructing, maintaining and operating a system of poles, wires and branches, and in the operation of electric telephones and telegraphs, heating, lighting and power apparatus, for the purposes aforesaid, and for other purposes for which electricity may hereafter be made and sold to the public under the public utility laws of this State, now in force or that may hereafter be enacted, modified or amended; that all overhead lines will be maintained not less than twenty-five feet, and all telephone wires not less than twenty feet above the surface of the earth.

The circuit court certifies that it sustained the demurrer to the said petition upon the following grounds:

First; because the petitioner alleges that it has been unable to agree with the defendant upon a fair price for the right of way or easement, and among other things for the cutting and trimming of trees and timber within a strip in all two hundred feet wide, or one hundred feet on each side of the center line, which it seeks to condemn for that purpose, when by section 6, chapter 52, of the Code, petitioner is not entitled to acquire exceeding one hundred feet in width along its line generally.

Second; because the trees to be so cut and trimmed are not pointed out and described so as to give the land owner notice of what trees within the limits sought to be taken will be so cut and trimmed.

Third; because the proposed taking is not definite or specific as to the places for opening and closing the fences, and so as to give the land owner notice when and for how long said fences will be left open.

Fourth; for the reason that the proposal does not give

notice or information to the land owner of the size of the poles and guys, the length and number of the cross arms, and the number of wires to be strung on said poles, and the voltage to be conveyed in and upon said wires.

Besides these grounds, defendant by counsel insists that there are numerous other grounds upon which it relies and now insists upon in support of the ruling of the circuit court. Whether these were urged below the record fails to show. If the ruling of the circuit court may be sustained upon other grounds than those certified, we should not reverse the judgment. *Riggs* v. *Parsons,* 29 W. Va. 522, and cases cited.

The brief and argument of counsel for petitioner is confined mainly to the points made by the court below against the sufficiency of the petition as a pleading. And to meet these, defendant relies on the following grounds of demurrer:

"1. Because no right of condemnation is shown by the application, and the applicant must set forth such facts in the application as show prima facie the right to condemn. This application fails to show such right of the public to its product, and such public control, interest and regulation as makes the proposed use a public one. (b) It does not show that appellant has complied with section fifteen, chapter fifty-four B of the Code.

"2. No necessity is shown for taking this property, or that equally suitable property can not be had without condemnation.

"3. No necessity is shown for an easement for general purposes twenty-five feet in width and forty feet at particular points.

"4. The application is too indefinite in its statements as to: (a) The number of poles and the distance of the poles from each other, both longitudinally and horizontally, along the line. (b) The size of the poles and guy wires, and the number of guy wires to be used. (c) The number of anchors if any. (d) The number of transmission wires and the method of supporting the same. (e) Whether the wires will be insulated or uninsulated. (f) The voltage or strength of current to be carried upon each wire. (g)

Whether cross-arms and braces or other supports will be used. (h) The general character of the work to be done upon the property sought to be condemned, and the equipment to be used. (i) The right of the land owner as to the maintenance of fences across the easement, and to be secure by said fences, because it is not shown how often they will be opened, or how long kept open at any time. (j) The further use to which the land owner may put the property sought to be condemned. (k) The timber appellant desires to cut or trim, and to what extent trimming will be done.

"5. Appellant can not condemn at all unless it is a company incorporated for a work of internal improvement, and unless the use to which it intends to put the property is a public once; and if it is a company incorporated for a work of internal improvement, and entitled to condemn any part of this property, it is limited to the condemnation of a strip one hundred feet wide."

The fifth, and last, of the five grounds of demurrer urged, manifestly should be first answered, namely, that the petitioner is not of the class of corporations given the power of eminent domain. As already shown, the petition alleges that the applicant is a public utility corporation, created, organized and already doing business in the State, for the purpose, among other things, of manufacturing, selling, leasing and conveying to corporations and other persons who may desire such service, electric current for the purpose of heating, lighting, ventilating, power and other public purposes, but that it is not a hydro-electric company.

Section 2, chapter 54 of the Code, among other purposes therein specifically described, by sub-section 10 thereof says: "And for any other purpose or business useful to the public for which a firm or co-partnership may be lawfully formed in this State." The petition affirmatively alleges that petitioner is not a water power company organized under chapter 54-B, Barnes' Code, 1923, and of course not bound to comply with the provisions therein made for condemning land for the purposes of that class of corporations. The right to take land by eminent domain in this case is predicated solely on the

provisions of section 2, chapter 42 of the Code, prescribing the public uses for which property may be taken or damaged, and among them: (6) For traction companies and for transmission lines, conduits, plants, stations, sub-stations and towers of telegraph, telephone, electric light, heat and power companies, when for public use; provided, that nothing herein contained shall be construed to give hydro-electric companies the right to take or damage private property for use in the manufacture and sale to the public of hydraulic, electrical or other energy or power produced by water as a motive force, except in so far as given to such companies for such purposes under the provisions of the law known as the 'water power act.' ''

Undoubtedly the petitioner, being other than a water power company, is such a public utility and public service corporation as without compliance with the water power act, is authorized to take by eminent domain a right of way for the purposes of its business, by the provisions of section 2 of chapter 42 of the Code. And we held in *Pittsburg Hydro-Electric Company* v. *Liston,* 70 W. Va. 83, that the granting of such power as is conferred by said section is not an unwarranted exercise by the legislature of the power of eminent domain.

As the purpose for which petitioner alleges it was organized and is now doing business falls within those for which such companies are authorized, by said section 2 of chapter 42 of the Code, to take land for public use, there certainly can be no doubt of its authority to do so; and upon demurrer the allegations of the petitioner must be taken as true. Petitioner does not purpose to take land for impounding water, and of course it could not take land for that purpose, for it is not a water power company. It was organized for and proposes to devote its property to public use by other means than water power; and of course it and its property which is devoted to the public use are subject to public control. *Wingrove* v. *Public Service Commission,* 74 W. Va. 190; *Carnegie Natural Gas Company* v. *Swiger,* 72 W. Va. 557.

But it is said by defendant's counsel that the mere state-

ment in the application that the proposed right of way is for public·use is not sufficient. This is no doubt the law; but if the petition alleges the applicant to be organized and to be already engaged in the business of serving the public in the way prescribed by the statute under which it was organized, and that the right of way proposed is necessary and is to be devoted to that use, the petition presents a good case for the exercise of the right of eminent domain. *Railroad Company* v. *Iron-Works,* 31 W. Va. 710. In *Hench v. Pritt,* 62 W. Va. 270, the petition alleged the property proposed to be taken was for public use; the facts alleged showed it was for private use; and of course it did not present a case for the exercise of eminent domain. Where the facts alleged are sufficient to show a public use the rule is otherwise. *Charleston Natural Gas Company* v. *Lowe and Butler,* 52 W. Va. 662.

Whether the property and plant of the petitioner be a work of internal improvement is, so far as its right to take land by eminent domain is concerned, immaterial, for if, as alleged, petitioner is of that class of public utility companies authorized to condemn land for public purposes, it has the right to exercise the power given by the statute to take private property for public use.

As to the second ground of demurrer, the want of a showing of necessity for taking the particular property, or that equally suitable property can not be secured without condemnation, it is sufficient to say that it is not necessary for the applicant to allege that it can not agree with the owner as to the taking or the amount of damages he is entitled to. The petitioner does so allege in this case. *Charleston Bridge Company* v. *Comstock,* 36 W. Va. 263. And where a corporation shows the purpose of its organization, and that the land it proposes to take for public use is necessary, and of necessity some land must be taken therefor, what land is necessary is generally a matter within its discretion. *Carnegie Natural Gas Company* v. *Swiger, supra, point* 5 of the syllabus, and authorities cited. There may be some exceptions to this rule, where the object is to take private property for burial purposes, as in *Cemetery Association* v. *Redd,* 33 W.

Va. 262, or where it is proposed by one railroad company to take the property of another, already devoted to public use, as in *Railroad Company* v. *Railroad Company*, 17 W. Va. 812.

Another point of demurrer is that the appellant does not show by its petition the necessity for a right of way of twenty-five feet, and forty feet, as alleged. Here again the width, being within the number of feet authorized in other cases, as for example railroads, the reasonableness of the width must necessarily be left largely to the reasonable discretion of the applicant.

Another point urged in support of the ruling of the circuit court on the demurrer is that the petition does not comply with the provisions of section 6 of chapter 42 of the Code, requiring of the applicant a specific description of the property proposed to be taken, and in the several particulars above enumerated under this point of demurrer, from (a) to (k) inclusive. By reference to these it will be quite manifest, we think, that it would be very impracticable for the applicant to specify in advance with more certainty than is done in the plat and description filed with the petition the rights and property to be secured. The plat and description referred to in the petition do not appear to have been certified to us with the petition; but it is said in argument that the blue print shows the number and location of the poles, guys and anchors, and that the description of the easement is there fully shown by metes and bounds in "Exhibit Description." We take notice that the proposed right of way is through and over forest and farm lands, not city lots, and  the importance and reasonableness of requiring of the applicant to state the number, size and location of the poles, etc., is not very apparent. To specify the number of transmission wires, the voltage or strength of the current, would depend, we think, on the amount and character of the demand. The general character of the work to be done on the ground is, we think, sufficiently indicated by the well known character of the equipment required and the manner of its installation. As to the right of land owner to maintain fences, and the privileges to open the same accorded by applicant, it is said the petition is.

too indefinite. The rule of reason, it seems to us, would be the only specification possible to be indicated in advance, and this would necessarily be implied, for one party must so use his property as not to unnecessarily do injury to another. Respecting the trees to be cut down or trimmed, it would be impossible, we would think, to specify them in advance. For the most part they could only be determined by the subsequent action of the weather or by their natural growth, to be from time to time indicated.

Coming lastly to the main ground upon which the court below sustained the demurrer, namely, that the applicant has no right, by section 6 of chapter 52 of the Code, to condemn any right beyond the distance of one hundred feet, or fifty feet on each side of the center line. Petitioner is not proposing to take as much as one hundred feet, and nothing in fee, but merely an easement over what it describes, with reservations to the owner to pass over the land and use and farm it as described, subject only to the paramount right of the petitioner to go upon the land from time to time as necessity may require, first to erect its poles, wires and lines thereon. Being clothed with the power of eminent domain, it certainly has the right to take so much as is reasonably necessary for the purpose and within the limits prescribed. And in such cases there is no great reason for defining width, as we observed in *Carnegie Natural Gas Company* v. *Swiger, supra,* and cases cited. In the case of railroads, also limited to one hnudred feet, they are given power, by sub-section 4 of sections 50 of chapter 54 of the Code, to go outside of their right of way and to cut down any standing trees that may be in danger of falling down upon or obstructing the railroad. In *Thomas* v. *Monongahela Valley Traction Company,* 90 W. Va. 681, we held that a carrier of passengers could not excuse itself from the result of an injury caused by a derailment of one of the cars by showing that such car was derailed by an obstruction falling down upon its tracks from off the hillside above its right of way.

A very elaborate argument is presented by counsel for petitioner, based on the history of the legislation on the subject, with the purpose of showing that it could not have been in-

tended by the Legislature to limit public service corporations other than railroads, turnpikes, canals, etc., engaged in work of internal improvements. We have not thought it necessary to go into that question, for it must have been intended to give companies like the petitioner the right to take what is reasonably necessary for the purposes of their enterprise; and as petitioner has not proposed to take as much as one hundred feet in width for an easement or right of way, except as to the incidental right to go beyond this distance simply to keep its lines free from obstruction by the growth or falling of trees across its lines, we see no necessity at this time to decide whether the petitioner is limited to the width prescribed for works of internal improvement.

Our conclusion therefore is to reverse the ruling of the circuit court and to overrule the demurrer to the petition; and we will so certify to the circuit court.

*Ruling reversed and demurrer overruled.*