# CHARLESTON.

BROOKE ELECTRIC COMPANY *v.* CHARLES H. BEALL.

Submitted April 29, 1924.    Decided June 16, 1924.

1. EMINENT DOMAIN—*Application by Electric Power Company to
   Condemn Right of Way for Construction of Power Lines
   Held Good as Against Demurrer.*

   Where an electric power company files an application to
   condemn a right of way for the construction of power lines over
   the land of another alleging that it is a public utility corpo-
   ration organized under the laws of the state for the purpose
   of buying, selling, leasing and conveying to other persons
   and corporations electric current or power for the purpose
   of heating, lighting, ventilating and other economic purposes,
   and that the applicant is about to construct lines of wires
   from a point on the Ohio River at the Windsor power
   house in Brooke County in a northeasterly direction across
   the county of Brooke into the State of Pennsylvania, and
   that said electric lines when erected will be connected with
   the electric power house at Windsor and with other lines in
   the State of Pennsylvania, and will be used to convey electric
   power and current for the uses aforesaid, and for public and
   private use by the customers of the applicant and by any and
   all who may apply for the same under the provisions of the
   laws of the State of West Virginia; that said applicant
   is now operating and will continue to operate the said busi-

ness as a common carrier and as a public utility corporation under the laws of the State of West Virginia; that the property sought to be taken is necessary and will be used by the applicant for the purpose aforesaid and fully describes the property sought to be taken, and alleges that it has been unable to agree with the owner of the land as to the price of the same; that notice has been given according to law and prays that commissioners may be appointed to ascertain the value, etc.; it is not error for the lower court to overrule a demurrer to said application. (p. 639).

2.  SAME—*Pleas of Owner Denying Allegations of Application of Operating Public Utility Company for Right of Way Should be Filed and Proof Allowed Thereon.*

Where a defendant offers to file an answer and pleas which deny that said corporation is a public utility company, and alleges that it does not intend to construct a power line the current from which will be used for public and private use by the customers of the applicant, and by any and all who may apply for use of same under the provisions of the laws of the State of West Virginia, and alleges that it is not necessary for the petitioner to take the land sought to be condemned, the court should allow said pleas and answer to be filed, and the defendant should be allowed to take proof thereon. (p. 639).

3.  SAME—*Not Denied Public Utility Corporation Constructing Electric Power Lines to Convey Power to Connecting Lines in Another State.*

Where a public utility corporation is constructing its electric power lines from a point in this state to a point in another state, and it alleges and shows that said lines will be used to convey power for public and private use by its customers and by any and all who may apply for the same under the provisions of the laws of the State of West Virginia, the right of eminent domain will not be denied it, notwithstanding that said lines will be used to convey power to connecting lines in another state. (p. 639).

MILLER, JUDGE, absent.

Error to Circuit Court, Brooke County.

Action by the Brooke Electric Company against Charles H. Beall. Judgment for plaintiff, and defendant brings error.

*Reversed.*

*Ramsay & Wilkin, Brown, Jackson & Knight* and *Harold A. Ritz,* for plaintiff in error.

*Erskine, Palmer & Curl,* for defendant in error.

McGINNIS, JUDGE:

This is a proceeding by the Brooke Electric Company, a corporation, against the defendant, Charles H. Beall, to condemn a right of way over a certain strip or parcel of land owned by the defendant, for the purpose of erecting and maintaining electric lines to be used for the purpose of conveying electric power.

The applicant, after due notice, filed in the Circuit Court of Brooke County its application in which it alleges that it is a corporation organized and operating under the laws of the State of West Virginia as a public utility corporation, for the purpose of manufacturing, buying, selling, leasing and conveying to other persons and corporations electric current or power for the purpose of heating, lighting, ventilating and other economic purposes and that the applicant is now about to construct lines of wires supported by poles, braces, towers, fixtures and other structures from a point near the Ohio River at the Windsor power house in said county of Brooke in a northeasterly direction across the county of Brooke and into the State of Pennsylvania; that said electric lines when erected will be connected with the electric power station at Windsor and with other lines in the State of Pennsylvania, and will be used to convey electric power and current for the uses aforesaid, for public and private use by the customers of the applicant and by any and all who may apply for the use of the same under the provisions of the laws of the State of West Virginia; that said applicant is now operating said business as a common carrier and is a public utility corporation under the laws of the State of West Virginia. Applicant further alleges that for the purpose of constructing the necessary electric line poles and equipment, usual and proper for the carrying on of its business it is absolutely necessary for the applicant to have the use of and occupy a certain right of way over a certain parcel of land now belonging to the defendant,

Charles H. Beall, describing the land as being situate in Brooke County adjoining the land now or lately owned by Louise Paull and west or southwest of land now or lately owned by William Lowry and as containing —— acres; and said application describes the center line of said land through the land of the defendant as running from the beginning point, which is located on the property line common to the lands of William Lowry and C. H. Beall, being located eastwardly along said property line a distance of 921.5 feet from a property corner common to the lands of said Beall and Lowry, and thence through the lands of said C. H. Beall following a center line having a bearing of south seventy five degrees and thirty minutes west (75° 30') a distance of 2418 feet to a point on a property line common to the lands of C. H. Beall and the lands of Louise Paull. Said application also alleges that said right of way is needed and will be used for the purposes aforesaid; that applicant has been unable to agree with said defendant as to the price for said right of way; that due notice has been given by service upon the defendant more than ten days prior to the day set for hearing and a copy of the notice is filed with the application; and said application further alleges that a plat filed with said application shows the exact location of said right of way proposed to be taken, and prays that commissioners be appointed by the court to ascertain a just compensation to said defendant for the parcel of real estate proposed to be taken by the applicant.

The application was regularly filed in said court on the 29th day of January, 1923, and the case set for hearing on the 10th day of February, 1923, the court requiring 10 days notice to be given the defendant of such hearing, and on the 12th day of February, 1923, the defendant demurred to said application which demurrer was set down for argument on the 17th day of February, 1917. This demurrer is in writing and sets up several grounds.

On the 3rd day of March, 1923, the court sustained the demurrer on the ground, "that the right/ of way asked for is more than 100 feet in width," whereupon the applicant asked, and was granted, leave to amend its application by inserting an additional paragraph therein which we think

fully meets the objection, and to the amended application, the defendant again demurred assigning the same grounds as set forth in his demurrer to the original application and the court overruled this demurrer, whereupon the defendant offered to file his answer and six special pleas to which pleas and answer the applicant demurred and the court sustained the demurrer to said pleas, but it apparently did not pass on the demurrer to the answer of the defendant.

The court, by an order entered July 31, 1923, held, that the applicant had the right to have the land condemned and appointed commissioners in the manner prescribed by law and directed them to go upon the land and ascertain the value of the part thereof proposed to be taken by said applicant together with the damage, if any there be, to the residue of said tract of land aside from the peculiar benefits accruing thereto by reason of the construction of said improvement. The said commission made their report and assessed the value of the land proposed to be taken at $1207.00. To this report the defendant excepted and the court permitted the applicant to pay said money into court which was done and the applicant was permitted by the court to enter upon and take the land for the purposes specified in its application.

Defendant's counsel file a brief for the defendant in this case and, also, for Mrs. Louise Paull, in the case of *Brooke Electric Company* v. *Louise Paull,* another case in this court in which the same questions are involved as the questions involved in this case, and say that there is really but one question of importance presented for consideration in these cases, and that is whether the defendants can prevent the taking of their land against their will for the purpose of constructing a power line thereover to carry electricity across the county of Brooke from a point on the Ohio river into the state of Pennsylvania and that this question fairly arises on the demurrer to the petitions.

"That the petitioner does not show that applicant has any intention of furnishing any part of the current to be conveyed by it to any citizen or resident of the State of West Virginia, but that the contrary appears from the petition."

We do not so construe the allegations of the petition, it alleges.

"1. That it is a public utility corporation organized and doing business under the laws of the State of West Virginia.

"2. That said electric lines when erected will be connected with the electric power house at Windsor and with other lines in the State of Pennsylvania and will be used to convey electric power and current for the uses aforesaid for public and private use by customers of the applicant and by any and all who may apply for the use of the same under the laws of the State of West Virginia. Said applicant is now operating and will continue to operate the said business as a common carrier and as a public utility corporation under the laws of West Virginia."

Where a public service corporation is organized to serve the public, it assumes the duties and responsibilities incident to its service and imposed upon it by law. Upon demurrer to this application we cannot say what the intention of the applicant is for constructing this power line through Brooke County to the Pennsylvania line, in any other way than by the allegations of the application itself. It alleges that such lines when erected will be used to carry electric power for the purpose of heating, lighting, ventilating and other economic purposes and used for public and private use of its customers and all who may apply for the use of the same under the provisions of the laws of the State of West Virginia, and if the application had not expressly alleged that its purpose was to convey electric power to any and all who may apply for the use of the same, if it exercises the right of eminent domain as a public utility company, the law fixes the duty of supplying all persons who may apply for the same upon reasonable and uniform terms either fixed by it by contract with the users thereof or by the Public Service Commission, and if the transmission lines of a public service corporation pass through any portion of the state into another state it will be compelled, under the law, to supply its customers in this state who may apply for the same along its lines at reasonable rates, or at rates fixed by the Public Service Commission.

Judge MILLER in the opinion of this court in the case of *Carnegie Natural Gas Company* v. *Swiger,* 72 W. Va. 571, says:

"Pipe lines for transporting oil must carry oil, as railroads must carry passengers and freight, at reasonable rates, if such rates are not fixed by statute. Pipe line companies organized for transporting gas must serve the people with gas, under reasonable and proper regulations, along the entire line traversed, and for reasonable rates fixed by themselves or by statute, or by contracts or ordinances of municipalities. Are not the rights of the public so fixed sufficiently definite to answer the requirements of the law? We think so. The rights of the people are thus protected in nearly every case where the public is served by public service corporations, furnishing water, gas, electricity, or transportation."

We do not think that the question as to whether or not a public utility company organized under the laws of this state and doing business in the state can exercise the right of eminent domain in this state for the sole purpose of transporting electricity out of the state, properly arises in this case, for it is apparent from the application that the applicant is intending when its lines are completed to supply electricity to any and all of its customers both within and without the state, and the case of *Carnegie Natural Gas Company* v. *Swiger, supra*, recognizes the right of eminent domain to a foreign corporation to condemn · private property for its right of way for its pipe lines used for the transportation of natural gas out of the state, though only a small portion of the gas along said line is used by the citizens of this state.

We think the court did not err in overruling the demurrer to the amended application. We are of the opinion that the lower court erred in sustaining the demurrer to special pleas numbers 1, 2 and 3 filed by the defendant.

"True it is however that courts may generally inquire into the question whether the property proposed to be taken is for a public use, even though the condemnor be of a class of persons or corporations authorized to take land for public use. The court below properly exercised this jurisdiction in this case, it permitted issues to be made up to try the question and by finding and adjudging that the petitioner had the right to take the porperty by condemnation it necessarily decided that the use to which the right of way or easement

proposed to be taken was to be devoted, was a public use giving the right to take." *Carnegie Natural Gas Company* v. *Swiger, supra.*

Under the pleadings in this case, we think the lower court erred in not inquiring into the questions raised by the pleas and answer of the defendant, and that the lower court erred in sustaining the demurrer to defendant's pleas number 1, 2 and 3. Pleas numbers 4, 5 and 6 were properly rejected. Plea number 1 denies the necessity for the petitioner to take the land or any part thereof. It has been held that:

> "Within certain limitations a railroad corporation may preliminary to the exercise of eminent domain, determine what and how much land of the citizen it will condemn for its purposes and so long as it acts within such limitations its discretion is practically absolute. Courts will supervise the exercise of the power but will not control the right to take any particular property except where the power is clearly abused." *Railway Company* v. *Limestone Company,* 76 W. Va. 24.

We assume that the same rule governs all public service corporations having the right to exercise the right of eminent domain. Notwithstanding this rule, the court should, upon proper pleading, inquire as to whether or not this discretionary power is being exercised within reasonable limitations.

Plea number 2 alleges that the applicant does not intend to construct a power line the current from which will be used for public and private use by the customers of the applicant. Plea number 3 denies that the applicant is a public utility corporation and alleges that it is a private corporation transacting and doing business with such persons and corporations as it sees fit to contract with and furnish power for or do business with. These pleas, if supported by a preponderance of the evidence, would constitute a complete defense to this proceeding.

It is nevertheless true that the applicant may be able to show that it is a duly organized public utility corporation organized and doing business as such in the state and that it is engaged in the business alleged in its petition and if

it so shows, it has the right under sub sec. 6 of sec. 2 of ch. 42 of the code, to condemn a right of way for the purposes alleged in its application and the easement sought to be condemned will be prima facie deemed and treated as intended for public use and the burden of showing the contrary rests on the defendant. *Carretta Railway Company* v. *Coal Company*, 62 W. Va. 185; *Williamsport N. & M. Railway Company* v. *Standard Limestone Company*, 76 W. Va. 21. But when these material facts are denied the court is not justified in taking all the allegations of the application as true but should hear the evidence both for the petitioner and the defendant and decide the case from the evidence.

The defendant was not permitted to file his proper pleas and therefore not permitted to offer any evidence in support of them and in this the lower court erred, and this case will be reversed, the exception to the commissioners report sustained and the order entered, permitting the applicant to take the property, set aside and a new trial awarded.

*Reversed.*