# CHARLESTON.

MONONGAHELA WEST PENN PUBLIC SERVICE COMPANY *v.* C. F. CUNNINGHAM COMPANY.

(No. 5144.)

Submitted June 6, 1924.    Decided February 3, 1925.

EMINENT DOMAIN—*Company Operating Railroad by Electricity Held Entitled to Exercise Eminent Domain in Construction of Transmission Lines to Carry Electricity Generated by Steam, Without Special Permit from Public Service Commission.*

By Sub-section 10-a, Section 50, Chapter 54, Code, a corporation chartered as a railroad company, and engaged in the operation of street or interurban railroads by electricity or any motive power other than steam, is given the status of a power company entitling it, under Clause 6, Section 2, Chapter 42, Code, to exercise the right of eminent domain in the construction and maintenance of transmission lines to carry electricity generated by steam as a motive power without a special permit from the public service commission under Chapter 54, Code, known as the "Water Power Act;" notwithstanding the ultimate ownership of a majority of its stock is vested in another corporation or corporations interested in the development of hydro-electric projects in this State.

Error to Circuit Court, Harrison County.

Application by the Monongahela West Penn Public Service Company to condemn a certain easement across the land of the C. F. Cunningham Company. The applicant's right to condemn was sustained, and defendant brings error.

*Affirmed.*

*Edward G. Smith, David D. Johnson,* and *Frank C. Fisher,* for plaintiff in error.

*Steptoe & Johnson, Leo P. Caulfield,* and *James M. Guiher,* for defendant in error.

LITZ, JUDGE:

The applicant, Monongahela West Penn Public Service Company, is a domestic corporation chartered as a railroad company under Section 32, Chapter 54, Code, owns and operates as a common carrier an electric railway system in Marion, Harrison and Lewis counties, West Virginia, and also furnishes electric light, heat and power to cities, towns and villages and to domestic, commercial and industrial consumers in said counties and the counties of Taylor and Barbour of this State. It also produces the electricity required for these purposes by a steam plant at Rivesville, Marion County, and transmits the same for distribution over a main transmission line, numerous branch lines and service connections. The applicant seeks to condemn an easement across the land of defendant situated in Harrison County in the construction and maintenance of a circuit, or additional main transmission line to relieve the present main line and insure more continuous and efficient service to the public. There is no question as to the necessity of this additional main transmission line in order that the utility may render proper and adequate service, both in the operation of its railway system and in supplying electric light, heat and power to its numerous consumers. The land owner, however, would deny the applicant the right of eminent domain on the ground that the latter is not authorized under its charter, or the general law, to engage in the business of furnishing electricity to the public and further because it has not obtained from the public service commission a permit provided for under Chapter 54-B, Code, 1923, known as the "Water Power Act."

The purpose of this Act, disclosed by its terms, is to place under the supervision and control of the State, through the public service commission, all water streams within the State capable of developing hydraulic, electrical or other energy or power. To this end Section 29 thereof extends the jurisdiction of the public service commission under the act to all

persons, associations of persons, firms, corporations, municipalities and agencies engaged in the generation of electricity or other power by water as a motive force, and the transmission of the same for the purpose of furnishing customers with light, heat or power or for other purposes; and to all persons associations of persons, firms, corporations, municipalities and agencies engaged in the furnishing or transmission of water from dams (within the purview of the Act) for power, manufacturing, municipal, domestic, irrigation or other purposes. Under section 3, domestic corporations authorized by their charters to manufacture, supply and sell to the public hydraulic, electrical or other energy or power produced by water as a motive force or by any auxiliary plant or plants belonging to such corporations and operated by steam or other power, may exercise the right of eminent domain after obtaining permit from the public service commission. A public utility furnishing to the public electricity produced by steam power alone, and which is not authorized by its charter to manufacture and transmit hydro-electric power, does not, however, come within the regulatory provisions of the Act and is not, therefore, required to obtain a permit from the public service commission in order to exercise the power of eminent domain or other rights incident to a public service business. *W. Va. & Maryland Power Co.* v. *Racoon Valley Coal Co.,* 93 W. Va. 505. There is no claim that the applicant is authorized by its charter to manufacture and transmit electrical or other power generated by water as a motive force, or is in fact doing so; but the control of its stock through intercorporate ownership, being vested in other corporations interested in the development of hydro-electric projects, the contention is made that the applicant is, within the meaning and purpose of the Act, a corporation engaged in the manufacture and transmission of hydro-electric power, and hence required to obtain a special permit from the public service commission before exercising the right of eminent domain.

The alleged connection between the applicant and other associated corporations involving hydro-electric projects within the State of West Virginia for the most part rests upon the

following facts: The West Penn Company, a holding corporation, is the ultimate majority stockholder of the applicant and the West Virginia Power & Transmission Company. The last named, with its subsidiaries, owns what is known as the hydro-electric project of the Cheat River basin, embracing an uncompleted dam in the Cheat river at the State line between this State and Pennsylvania, and certain lands along the Cheat River and its tributaries. This dam has remained in its present unfinished state since 1914, and two years will be required for its completion and the construction of the necessary plant for production of hydro-electric power. It is proposed, after the completion of this dam, to construct auxiliary dams in the upper reaches of the Cheat River and its tributaries with the view to the ultimate development of water power in the Cheat River basin, and the marketing of electricity produced therefrom to the public generally, and especially to the various electric railroads and light, heat and power companies in the surrounding territory controlled by the holding companies. The applicant company has no charter power as a hydro-electric corporation; it possesses no water power projects or rights; has never produced or used any but steam generated electricity; in the twenty years of its existence it has had no agreement or understanding for the purchase or use of hydro-electric power; and the circuit line in question was projected and partly constructed before the majority of its capital stock was acquired by the corporations controlling the hydro-electric projects.

It is said that the West Virginia hydro-electric project is part of a great system of amalgamated interests under the supreme direction of the American Water Works and Electric Company, having as its object the manufacture and distribution of electricity in West Virginia and neighboring States. The evidence does not, however, warrant the conclusion that the West Virginia Power and Transmission Company, or any other corporation, has violated or intends to violate any law, State or Federal, in the manufacture and transmission of hydro-electric power in this State.

An additional transmission line being required properly to serve the public with steam-produced electricity, why

should the right to condemn an easement for the construction and maintenance of such line be denied merely because at some future time it may be used to carry hydro-electric power? It is presumed that the requirements of the water power act will be observed in the development of water power in the State for the generation of electricity. Moreover, if the Act is valid, the State can compel its observance. The applicant is seeking to condemn the easement for a present legitimate public purpose. Its charter powers do not entitle it to a permit from the public service commission under the water power act, it having no authority thereby to engage in the manufacture and transmission of hydro-electric power. Then why should the applicant attempt to obtain something which the law does not require or authorize?

The land owner further defends on the ground that the applicant is not authorized by its charter or general law to supply and sell electricity to the public and is not, therefore, a public utility in that respect, the proposed transmission line being unnecessary in supplying electricity for the operation of the railway system. It is conceded that such authority is not given in terms by the charter. Sub-section 10-a, Section 50, Chapter 54, Code, however, provides that in the case of a corporation engaged in the operation of street or interurban railroads by electricity or other motive power than steam, it shall have the right to furnish and sell to the public, after having procured a franchise therefor from the municipality in which it seeks to operate, electricity and gas, either natural or artificial or both, for light, heat, power or fuel, and to *purchase, hold and use* such property, rights, privileges and franchises as may be necessary in the generation, production, manufacture and sale to the public of electricity and gas for light, heat, *power* or fuel.

The defendant contends that although the applicant is authorized by the statute to enter into the service of furnishing to the public electric light, heat and power, the grant of specific power to purchase, hold and use property, rights, privileges and franchises necessary for the conduct of the business must be construed to deprive it of the right of emi-

nent domain as a public service corporation; so that, notwithstanding the applicant for many years has been serving thousands of customers by the operation of a great system of transmission lines, it may not condemn one inch of right-of-way to serve other customers or the better to supply its present patrons. Under Clause 6, Section 2, Chapter 42, Code, electric light, heat and power companies serving the public are authorized to condemn property for transmission lines, conduits, plants, stations, sub-stations and towers. The effect of Sub-section 10-a, Section 50, Chapter 54, being to amend the charter powers of the applicant, authorizing it to engage in the business of furnishing to the public electric light, heat and power, Clause 6, Section 2, Chapter 42, plainly gives it the right of eminent domain conferred on electric companies, notwithstanding the specific power granted by the former statute to purchase, hold and use necessary property, rights, privileges and franchises in the conduct of the business.

Sub-section 10-a, Section 50, Chapter 54, was enacted in 1917, as Chapter 42 of the Acts of the Legislature for that year. The title of the original act follows:

> "An Act to amend and re-enact section fifty of chapter fifty-four, serial section two thousand nine hundred and forty-nine, of the code of one thousand nine hundred and thirteen, relating to general powers of railroad corporations, by adding thereto subsection ten-a; giving the right to street or interurban railroad companies operated by electricity or power other than steam, to furnish electricity, natural or artificial gas for light, power and fuel; to lease or purchase the property, franchises, rights and privileges of companies organized for such purposes, and to succeed to and operate under the same."

So the Act, according to its title, confers upon street or interurban railroad companies, operated by electricity or power other than steam, the status of power and gas companies with the incidental right to lease or purchase the property, franchises, rights and privileges of corporations organized as gas or power companies and to succeed to and operate under the same.

The fallacy of defendant's position is therefore emphasized by the title of the Act, for if the applicant, as a power company, may acquire property only by lease or purchase, the right, according to the title of the Act, is further limited to property owned by corporations organized as power companies. This test clearly shows that there was no intention on the part of the Legislature in granting specifically the right to purchase property thereby to exclude the power of eminent domain which adheres to public utilities. Apparently the only purpose of the provision in question was to make sure to corporations taking advantage of the statute the right to acquire properties of companies organized to furnish gas or electricity to the public.

The judgment of the circuit court sustaining the applicant's right to condemn, of which the defendant complains, will be

*Affirmed.*