73 S.E.2d 809 (1952)
MONONGAHELA POWER CO.
v.
SHACKELFORD et al.
No. 10500.
Supreme Court of Appeals of West Virginia.
Submitted September 4, 1952.
Decided September 23, 1952.
Dissenting Opinion January 13, 1953.
*810 Wm. T. George, Sr., Philippi, Francis L. Warder, Grafton, for plaintiffs in error.
Steptoe & Johnson, Chesney M. Carney, and Eugene G. Eason, Clarksburg, Ernest R. Bell, Fairmont, O. E. Wyckoff, Grafton, for defendant in error.
GIVEN, Judge.
The Monongahela Power Company seeks to condemn an easement for the construction and operation of an electric transmission line across three adjacent parcels of land owned by I. T. Shackelford and others, situated in Taylor County. The parcels contain 44, 15 and 2.75 acres respectively. The petition describes each tract by metes and bounds and describes the easement sought to be condemned by definitely defining the center line thereof. The center line crosses over a water cistern furnishing water to one of two dwellings upon the premises, and is ninety-five feet from the nearest dwelling. No width of the *811 easement or of any part of the tracts over which the easement is sought is indicated in the petition. In addition to the easement, condemnor asks that it be given rights of ingress and egress over the property of condemnees for the purpose of constructing and maintaining the proposed line, including the right to trim or cut trees that would probably interfere with the construction or operation of the line. Condemnees filed a demurrer to the petition, contending that petitioner failed to describe with sufficient certainty the easement sought to be taken; that the petition does not allege that the easement sought to be taken would not include a dwelling house, and would not invade land within sixty feet of a dwelling house; and that the condemnation of land within sixty feet of a dwelling house is prohibited by statute. At the time of filing the petition condemnor tendered a bond, conditioned upon payment to condemnees of just compensation for the easement sought to be taken, and moved the court to enter an order permitting the condemnor, upon approval of the surety on the bond, to enter upon and use the easement sought to be condemned. The court required that the penalty of the bond be increased, and a new bond tendered by condemnor, and the surety thereon, were approved by the court. The demurrer to the petition was sustained "in so far as it related to the failure of petitioner to aver the proposed right of way does not invade any dwelling house of defendants situate on the lands described in the petition, or any space within sixty feet thereof", and overruled the demurrer "as to the other points thereof * * *."
An amended petition was then filed by condemnor, which was to the same effect as the original petition, except that it contained a further allegation that "applicant will not invade the dwelling house of any of the defendants or any other persons, or any space within sixty feet of any dwelling house on the land of the defendants." Condemnees demurred to the amended petition, raising questions hereinafter considered, and filed an answer thereto. For reasons not material here, the court sustained a demurrer as to each paragraph of the answer, except Paragraphs 6 and 8. Paragraph 6 charges, in effect, that the condemnees are owners of two dwelling houses situated upon the forty-four acre tract; that there exists a water cistern upon said land which furnishes water to one of the dwellings; that the center line of the proposed easement crosses the cistern, and that condemnees have not consented to the invasion of the dwelling, or the space within sixty feet thereof. Paragraph 8 charges that the proposed easement "being of unlimited width or depth, would invade the dwelling houses of these respondents and the restricted area of sixty feet surrounding such dwelling houses." If the facts set out in Paragraphs 6 and 8 are true, then the right of condemnor to acquire part of the property proposed to be taken is prohibited by provisions of Code, 54-1-4, as amended. The court heard evidence relating to the contention that the taking of the proposed easement would constitute the taking or invasion of the dwelling house and of the space within sixty feet of the dwelling house. Before the taking of any evidence, petitioner moved the court that the order to be entered provide that "no servitude at all" be imposed upon the water cistern. After hearing evidence offered by the parties, the court found that the easement proposed to be taken "will not invade the dwelling houses of any of the defendants, or any space within sixty feet thereof, and that the cistern which furnishes water to one of the dwelling houses on said land is not a part of the said dwelling house, * * *."
On February 15, 1952, the court entered an order authorizing petitioner to enter upon and take possession of the easement sought to be condemned, particularly describing each of the three tracts of land and the center line of the proposed easement. The order further provided, in effect, that the power line should consist of three conducting wires and two ground wires, and such poles, anchors, guys and other devices necessary or convenient in the maintenance or operation of the line; that the wires have a minimum clearance above the ground of twenty-five feet, and to be placed on crossarms of not more than thirty-two *812 feet in length; that the applicant have reasonable and necessary rights of ingress and egress, with the right to cut and remove possible falling timber and to clear the easement of undergrowth, limbs or trees that would possibly interfere with the operation of the line; that applicant did not desire to impose any servitude upon the water cistern or the "coal, oil and gas * * together with the mining rights and privileges thereunto belonging, and that the coal, oil and gas and the mining rights and privileges * * * shall not be taken in consideration by the commissioners" in fixing just compensation; that the landowners would not be permitted to so maintain the water cistern as to constitute a hazard to the line; and that the landowners would not be permitted "to erect or maintain any buildings or structures underneath said wires or so close thereto as to create a hazard or danger to said electric power line * * *." By the same order condemnation commissioners were appointed and, after due notice and hearing, an award was returned by the commissioners in the amount of $750.00. This Court granted condemnees a writ of error and supersedeas.
Code, 54-1-4, as amended, with the exception of certain situations not applicable here, prohibits any company of internal improvement, in locating and constructing its lines, from invading "the dwelling house of any person, or any space within sixty feet thereof, without the consent of the owner, * * *." The contention of condemnees that the taking of the easement constitutes an invasion of the dwelling house is principally based upon the premise that the water cistern is a part of the curtilage and therefore included within the term "dwelling house". We think there is no merit in the contention. It is not disputed that the cistern is more than sixty feet from the nearest part of the dwelling. Ephriam Merle Shackelford, one of the condemnees, testified that the cistern was "better than two hundred feet" from the dwelling. The statute, we think, makes it clear that any property not within sixty feet of a dwelling house, whether a part of the curtilage or not, may be condemned for public improvements. The question, therefore, of whether the water cistern is part of the curtilage is not controlling. The test, in the circumstances, is whether any part of the cistern is within the sixty foot space adjacent to the dwelling. Cases relied upon by condemnees, such as Gilbert v. McCreary, 87 W.Va. 56, 104 S.E. 273, 112 A.L.R. 1172, relate to situations where the conveyance of a dwelling house for use as such necessarily implies the inclusion in the conveyance of the land under the dwelling or the curtilage necessary for the enjoyment and use of the dwelling for the purposes intended. The rule has no application here.
Condemnees further contend that there is a taking or invasion of the dwelling and the space within sixty feet thereof, inasmuch as the easement sought is unlimited in width. This contention will be sufficiently dealt with in the consideration of the following question.
Should the easement sought to be condemned be limited to a certain width, or is it sufficient to describe the easement by merely defining a center line? As above indicated, pleadings and orders herein particularly define the so called center line of the proposed easement, but give no width or outside boundary lines thereof, and in no way limit the extent of the easement or designate the quantity of land over which the proposed easement is sought. Condemnor contends that such facts need not be alleged or shown by evidence, and relies upon Carnegie Natural Gas Company v. Swiger, 72 W.Va. 557, 79 S.E. 3, 46 L.R.A.,N.S., 1073; West Virginia & Maryland Power Co. v. Racoon Valley Coal Co., 93 W.Va. 505, 117 S.E. 891; United Fuel Gas Co. v. DeBerry, 130 W.Va. 481, 43 S.E.2d 415; United Fuel Gas Co. v. De-Berry, 130 W.Va. 418, 43 S.E.2d 408. While the facts in the Carnegie and other cases cited may, in some respects, be distinguished from the facts in the instant case, and while the correctness of the rule, applied in those cases, may be seriously questioned, we think the disposition of the question now turns upon the application of Code, 54-1-6, as amended by Chapter 60, Acts of the Legislature, 1949, Regular Session. The act *813 now reads: "The land acquired by condemnation by any railroad company for its main depots, termini, buildings, machine shops, railroad yards and railroad facilities, and the land or interest therein so acquired by any company incorporated for a work of internal improvement along its line generally, or for any other public use authorized by section two of this article, shall be limited to such quantity as is necessary for the purpose or purposes for which it is appropriated." Prior to its amendment the section, in so far as pertinent, read: "The land acquired by condemnation by any company incorporated for a work of internal improvement along its line generally, shall not exceed one hundred and fifty feet in width, except in deep cuts and fillings, and then only so much more shall be acquired as may be reasonably necessary therefor * * *."
The amendment effected two pertinent and significant changes in the section. It omitted any limit as to the maximum width of any property sought to be acquired by any company for the construction and maintenance of its lines, and provided that property acquired for such purpose shall be "limited to such quantity as is necessary for the purpose or purposes for which it is appropriated." Thus, the amendment would seem to clearly require that before a taking could be authorized it must be determined that the quantity of land to be acquired is "limited to such quantity as is necessary for the purpose or purposes for which it is appropriated." It was not the intention of the Legislature, in making the change in the statute, to eliminate all restrictions as to the quantity of property which may be condemned, but to permit the condemnation of only so much property as is actually necessary for the purposes for which it is required. It is not for the condemnor alone, nor for the condemnee alone, to finally determine the necessary quantity, but a question for the court upon proper pleadings, or pleadings and proof. Brooke Electric Co. v. Beall, 96 W.Va. 637, 123 S.E. 587; 18 Am. Jur., Eminent Domain, Section 110. In the instant case no pleadings define or limit the extent of the proposed easement or show the width of any definite parcel of land over which the easement is sought, and the testimony of witnesses who testified on behalf of condemnor, including its engineer, clearly shows that the extent or width of the easement is unknown. The trial court did not and, in these circumstances, could not have determined the extent of the easement, and could not have determined that no more property is being acquired than necessary for the purposes for which it is being taken. Of course, the statute does not prohibit the condemnor from acquiring rights or privileges appurtenant to the property taken and necessary for the use and purposes for which it is being acquired, such as ingress and egress, or the cutting and removal of trees which will interfere with the proper use of the property taken. Those rights would probably be implied should they not be expressly provided for in the proceeding.
So interpreted, the statute has the effect of bringing the rule to be applied in this State into accord with what we believe to be the rule applied in the great majority of cases. The reasons therefor, and what was apparently intended to be accomplished by the Legislature in enacting the 1949 amendment, may be gathered from the following quotation from the opinion in Otter Tail Power Co. v. Von Bank, 72 N.D. 497, 8 N.W.2d 599, 603, 145 A.L.R. 1343:
"In condemnation proceedings where land is sought to be taken, the plaintiff must describe it with accuracy and certainty. See 29 C.J.S., Eminent Domain, § 259, pages 1228 et seq. And this is the purport of subsection 5 of section 8220, supra. We cannot see why the same certainty and accuracy are not essential where an easement rather than the land itself is sought in the proceedings. And the authorities so hold. The reasons for this requirement of certainty and accuracy are not far to seek. They are essential so that both the owner of the easement and the owner of the property subjected to it may know exactly what their rights are with respect to their different interests. And certainty is just as essential in order to determine the value of the interest *814 taken and the damage done by its taking to that portion of the property not subject to the easement. See, 29 C.J.S., Eminent Domain, § 259, pages 1230, et seq." See, 2 Lewis, Eminent Domain, 3d Edition, Section 552; 1 Nichols on Eminent Domain, Section 4.107; 18 Am.Jur., Eminent Domain, Section 325; Bell Telephone Co. v. Parker, 187 N.Y. 299, 79 N.E. 1008; Sibley v. Volusia County, 147 Fla. 256, 2 So.2d 578; Forest Preserve District, etc. v. Lehmann Estate, 388 Ill. 416, 58 N.E.2d 538; City of Gastonia v. Glenn, 218 N.C. 510, 11 S.E.2d 459; Dailey v. Missouri Pac. Ry. Co., 103 Neb. 219, 170 N.W. 888; Jones v. Indiana Power Co., 192 Ind. 67, 135 N.E. 332; State ex rel. Patterson v. Superior Court for King County, 102 Wash. 331, 173 P. 186.
Inasmuch as the award made by the commissioners must be set aside, and the petition praying condemnation of the easement be amended, if the condemnor be so advised, we think it proper to consider briefly the state of the record with reference to any servitude placed upon the water cistern or the minerals under the proposed easement. It will be recalled that the judgment complained of provided that no servitude be placed upon the cistern. The pleadings, however, were not amended, or the supposed center line relocated. It would appear from the state of the pleadings and orders that what the condemnor intended was to do no more than place and maintain its wires over and above the cistern. But that would impose a servitude upon the property of the landowners for which they would be entitled to at least nominal damages. Much the same situation exists as to any servitude upon the mineral rights of the landowners. The order complained of recited that "applicant does not desire to impose any servitude upon the coal, oil and gas underlying said land together with the mining rights and privileges thereunto belonging, and that the coal, oil and gas and the mining rights and privileges thereunto belonging shall not be taken into consideration by the commissioners appointed by the court in fixing the just compensation * * *." However, the order prohibits the landowners from doing anything in connection with the mining of minerals or "to erect or construct any buildings or structures underneath said wires or so close thereto as to create a hazard or danger to said electric power line and its operation and maintenance * * *." Such restrictions undoubtedly constitute limitations on the rights of the landowners and vest in the condemnor certain rights. In such circumstances, the landowners should not be denied the opportunity to establish damages resulting therefrom. The extent of such damages may be merely nominal, or very substantial, depending upon the facts of each case. For illustration only, we may suppose that proper evidence would establish that an electric power line of 132,000 volts over the water cistern would create such danger as to require the discontinuance of the use thereof, or that the denial of the right of a landowner to erect buildings or other structures, in the circumstances mentioned, would prohibit or largely increase the cost of removing the minerals. Such case might exist where the only point of opening of a mine or erection of a structure for drilling purposes would be included within the easement. We are not, of course, stating that any such circumstances exist here. We are merely attempting to demonstrate that a landowner should not be denied an opportunity to establish damages in such cases by proper evidence. Such damages, of course, can not be established by conjectural or speculative evidence. See Strouds Creek & M. R. Co. v. Herold, 131 W.Va. 45, 45 S.E.2d 513; Chesapeake & O. Railway Co. v. Allen, 111 W.Va. 481, 163 S.E. 22; Buckhannon & N. Railway Co. v. Great Scott Coal & Coke Co., 75 W.Va. 423, 83 S.E. 1031; Norfolk & W. Railway Co. v. Davis, 58 W.Va. 620, 52 S.E. 724.
After the writ of error and supersedeas were granted by this Court, condemnor appeared herein and moved the Court to dismiss the supersedeas, contending that the Court had no power to grant supersedeas because of the provisions contained in Code, 54-2-13, 15. Because of the conclusions reached herein, and inasmuch as *815 the case must be remanded to the Circuit Court of Taylor County for further proceedings, in accordance with this opinion, we think it unnecessary to now consider the question raised by the motion. See, however, Bluefield v. Bailey, 62 W.Va. 304, 57 S.E. 805.
The award found by the commissioners is set aside, the judgment of the Circuit Court of Taylor County complained of is reversed, and the case is remanded to that court for further proceedings in accordance with this opinion.
Award of commissioners set aside; reversed and remanded.
HAYMOND, Judge (dissenting).
The holding of the majority that under Code, 54-1-6, as amended by Chapter 60, Acts of the Legislature, 1949, Regular Session, the petition of the applicant in a proceeding in eminent domain to acquire an easement in land must describe the easement with such particularity that the court may determine that no more property is appropriated than is reasonably necessary for the purpose for which it is acquired, in effect requires the applicant definitely to restrict the width of the easement within fixed limits. In my opinion that holding is erroneous and from it I respectfully dissent.
As pointed out in the majority opinion, the map filed with the petition of the applicant definitely locates the center line of the easement proposed to be acquired. As also set forth in the opinion, the statute, before the amendment of 1949, limited the width of the land to be acquired to one hundred and fifty feet, but as amended in 1949, the limit imposed, instead of a definite number of feet in width, was fixed as "such quantity as is necessary for the purpose or purposes for which it is appropriated." It is evident that the Legislature, in removing the limitation of one hundred and fifty feet in width and in fixing the limitation to such quantity as is necessary for the purpose for which the land taken is appropriated, did not intend to require the applicant, in every instance, to describe by metes and bounds the external boundaries of the land or the casement sought to be acquired or to locate it on the ground within definitely fixed limits as to width. To give the statute, as amended, that effect is to impose a restriction not imposed by the statute, to force the applicant to take and pay for more than it wants or needs for its intended purposes, and to impress upon the land of the owner an entirely unnecessary and unwanted burden. Here the applicant does not want or need the use of a strip of land of a fixed or definite width. It simply wants and needs the right to go upon the land to construct, above the surface with reference to a fixed center line, its lines over a space which, under the allegations of the petition and the evidence, will not exceed thirty two feet in width and, after such lines are placed, to use so much of the land as may be necessary to maintain them in proper condition of safety and repair and from time to time as occasion may require to have ingress and egress to and from its equipment and lines for all necessary purposes in their operation and maintenance. The extent of the use of the land by the applicant for those purposes is clearly limited by the statute as amended which provides that it shall use only such quantity as is necessary for the purposes for which the land is appropriated. After the obstructions, if any, along and on each side of the center line are removed and the lines are constructed above the surface, the applicant, in the necessary use of the easement, will have occasion only rarely, if at all, to go upon the land, and the landowner will be free to use all of it at all times, subject only to such use of any of it by the applicant as may be necessary. This was evidently the use intended by the applicant to be made of the land when it filed its petition and omitted any description of the easement which expressly defines its maximum width.
This Court has repeatedly held that when an applicant shows the purposes of its organization, and that the land it proposes to take for public use is necessary, the quantity of the land to be taken by the *816 applicant is generally a matter within its discretion; that such discretion, if exercised within legal limitations, is practically absolute; and that the courts will not control the right to take any particular land unless such right of the applicant is clearly abused. State of West Virginia by the State Road Commission v. Bouchelle, W.Va., 73 S.E.2d 432; State v. Horner, 121 W.Va. 75, 1 S.E.2d 486; Shelton v. State Road Commission, 113 W.Va. 191, 167 S.E. 444; Brooke Electric Co. v. Beall, 96 W.Va. 637, 123 S.E. 587; West Virginia & Maryland Power Co. v. Racoon Valley Coal Company, 93 W.Va. 505, 117 S.E. 891; The City of Huntington v. Frederick Holding Co., 85 W.Va. 241, 101 S.E. 461; Williamsport, Nessle & Martinsburg Railway Co. v. Standard Lime & Stone Co., 76 W.Va. 21, 84 S.E. 908; Carnegie Natural Gas Co. v. Swiger, 72 W.Va. 557, 79 S.E. 3, 49 L.R.A.,N.S., 1073; Pittsburg Hydro-Electric Co. v. Liston, 70 W. Va. 83, 73 S.E. 86, 40 L.R.A.,N.S., 602. In my judgment the holding of the majority, in point 2 of the syllabus, that the petition of the applicant must describe the easement sought to be taken with sufficient particularity to enable the court to determine that no more property is appropriated than is reasonably necessary for the purpose for which it is acquired, violates the principles enunciated by this Court in the cases just cited and is contrary to those decisions in that it enables the court rather than the applicant to determine the extent of the easement which it seeks to acquire.
In Carnegie Natural Gas Co. v. Swiger, 72 W.Va. 557, 79 S.E. 3, 40 L.R.A.,N.S., 1073, involving an easement for a pipe line this Court held in point 2 of the syllabus: "Such right of way or easement authorized when less than the fee is taken need not describe a definite width or depth, but must pursue a definite line, with courses and distances given, and have definite and fixed termini." This syllabus was referred to and partially quoted with approval in the recent case of State ex rel. United Fuel Gas Co. v. De Berry, 130 W.Va. 481, 43 S.E.2d 415. In West Virginia & Maryland Power Co. v. Racoon Valley Coal Co., 93 W.Va. 505, 117 S.E. 891, 895, in which the applicant, a hydro-electric company, sought to acquire an easement for the construction and the maintenance of transmission lines over certain land, though the petition fixed limits to the width of the easement, this Court said that "in such cases there is no great reason for defining width, as we observe in Carnegie Natural Gas Co. v. Swiger, supra, and cases cited." I can not distinguish in principle or in substance or effect the description of the easement in the petition in the case at bar from the description of the easement sought to be acquired in Carnegie Natural Gas Co. v. Swiger, 72 W.Va. 557, 79 S.E. 3, 49 L.R.A.,N.S., 1073, which this Court held to be sufficiently definite. In my opinion point 2 of the syllabus in that case and the above quotation from West Virginia & Maryland Power Co. v. Racoon Valley Coal Co., 93 W.Va. 505, 117 S.E. 891, are clearly applicable to the easement sought to be acquired in this case.
The petition and the map exhibited with it set out a definite center line of the easement across the three parcels of land of the defendants of 44 acres, 2.75 acres and 15 acres and locate it on each of them by courses and distances and the center line, as located, has definite and fixed terminals. The petition alleges that the line for the transmission of electric power, for which the easement is sought, will consist of such poles, anchors, guys and other fixtures as may be necessary or convenient, three conducting wires and two ground wires to be located at all points at a distance of at least 25 feet above the surface of the land, crossarms not more than 32 feet in length to be attached to poles of 45 to 75 feet in length to support the wires, and a two pole structure and double crossarms on the tract of 44 acres. It also alleges that the wires are the only equipment to be placed over the tracts of 2.75 acres and 15 acres. In the petition the applicant prays that it be permitted to acquire an easement for its proposed transmission line and the right to go to and from the line for its construction, operation and maintenance, and to cut and remove any timber, *817 undergrowth, limbs and trees that might interfere with or create any hazard to such line, and states that, subject to the foregoing, the landowners shall have full use and enjoyment of the land except that actually occupied by poles, anchors and guys. It is clear that the use and the occupancy of the three tracts of land by virtue of the proposed easement as described in the petition are effectively limited to the installation and the maintenance of the designated construction equipment, consisting of poles, crossarms, anchors and guys, and the three conducting wires and two ground wires, and that the location of the wires is restricted to a width which may not exceed 32 feet which is the maximum length of the supporting crossarms.
The contention of the defendants that the easement sought by the applicant, as described in the petition, is without limit as to width or space and would enable the applicant to use all their lands or portions of them other than the portions occupied by the transmission line when constructed is wholly devoid of merit. As the width of the easement is in effect limited to 32 feet and as that maximum width and the right in the applicant of ingress and egress upon the lands of the owners to enable it to operate and repair the line and to maintain it in safe condition are all that is necessary for the purpose for which the easement is appropriated, the limitation of the statute, as amended, to such quantity as is necessary for such purpose would necessarily require the applicant to compensate the landowners for any additional land which it might use and subject it to liability for damages which would result from any use by it of any other or additional portions of their land.
For the reasons stated and under the authorities cited, I would hold that the easement sought by the applicant is adequately described in the petition and that the extent of the easement is effectively limited by the statute, as amended, which clearly restricts the amount of land subject to the easement to such quantity as is necessary for the purpose for which it is appropriated.