# CHARLESTON

MARY HELEN COAL COMPANY v. HATFIELD *et al.*

Submitted September 29, 1914.    Decided October 13, 1914.

1. INJUNCTION—*Pleading—Sufficiency.*
    The bill for injunction in this case sufficiently alleges irreparable damages and inadequacy of the remedy at law, to render it good on demurrer.  (p. 151).

2. EASEMENTS—*Right of Way—Relocation.*
    The general rule is that where there has been a general grant or reservation of an easement, or right of way over land, not definitely described, and with right given the grantee or the dominant owner to locate the same and he has once made the location, he cannot thereafter without the consent or agreement of the servient owner change or relocate such way.  (p. 153).

3. SAME—*Right of Way—Relocation—Construction of Contract.*
    But as in other cases contracts of this character are to be construed with reference to their nature and subject matter, and in the light of their objects and purposes, and also with reference to the subsequent acts and conduct of the parties in relation thereto; and where, as in this case, such grant is the right to lay a water pipe line from a water course over certain ''reservations'' to mining ''operations'' on the leased premises, and where after opening one mine
    75 W. Va.

and laying one pipe line by the lessee it is found impracticable, on account of mining conditions at that point, to successfully and profitably mine coal, and to perform the covenants of the lessee to use the best and most improved methods, and to pay the rents and royalties reserved, and it becomes necessary to abandon the old operation and locate a new mine and lay a new water line thereto across the reserved lands, and such new plant and water line have been so located and laid at great expense and used and operated for two years or more without interference by the lessor, equity will enjoin the lessor from thereafter interfering therewith, and from prosecuting suits for damages for the maintenance of such new water line.   (p. 153).

Appeal from Circuit Court, Mingo County.

Suit for injunction by the Mary Helen Coal Company against Virginia Hatfield and others. From decree for defendants, plaintiff appeals.

*Reversed and Rendered.*

*Stokes & Bronson,* for appellant.

*Wiles & Bias,* for appellees.

MILLER, PRESIDENT:

This controversy involves the proper construction of a lease by defendant of her lands for coal operations, to H. D. Hatfield, trustee, dated May 16, 1902, which lease and the rights thereunder came by process of transfer and assignment to the plaintiff company on March 14, 1910, and more particularly the eleventh paragraph of said lease as follows:

"The lessors do hereby grant and convey unto the lessee a right of way over, through and upon the demised premises for the purpose of hauling, transporting and carrying over the same water and timber for mining purposes and all coal and coke mined or manufactured upon other lands adjoining the demised premises, by the lessee, his successors or assigns, and covenant and agree that the lessee, his successors or assigns, shall have the right and privilege of hauling, transporting and carrying over, under through and upon the demised premises, as well as other adjoining premises of the lessors, not only coal and coke mined or manufactured upon the demised premises, but also upon any other lands now

owned or leased adjacent to the demised premises, or hereafter to be acquired by the lessee, and for that purpose to construct and maintain upon the demised premises all such roads, bridges and skidways as may be necessary for that purpose. *And there is granted to the said Lessee the right of laying a pipe line over the reservation herein mentioned under the surface so as not to interfere with the cultivation of said land from Tug River to mining operations on said demised premises.*"

It is that provision of this paragraph, which we have italicised, considered with reference to the character of the contract, the subject matter, its objects and purposes, and the rights and liabilities of the parties thereunder, with which we have to deal in this case. The bill alleges and the record shows that about May, 1910, shortly after plaintiff acquired title to the property, it began to rehabilitate or reconstruct the plant, built by the original lessee and operated by it and plaintiff's other predecessors, and in doing so found it necessary to relocate its power house and other works on the leased premises about a thousand feet east of the old location, and at which time, exercising as it believed its rights under the lease, located a pipe line from Tug river through the reserved lands, between four and five hundred feet, and the lands of the leased premises, about one hundred and fifty feet, to its water tank above and in the vicinity of its power house, for the purpose of supplying its boilers and coal washing plant, constructed in the same vicinity, with a sufficient supply of water. At first this pipe line was operated by a steam pump located on the bank of the river, steam being supplied through a steam pipe from the boilers, buried under the ground along with the water pipes from eighteen to twenty four inches. The water line was operated in this way from the time it was installed in May, 1910, without interruption or interference by the defendant, until shortly before the institution of this suit in May, 1912, when plaintiff substituted at the river for the steam pump an electric pump and motor and conveyed the electric power thereto from its power house by means of a wire strung from a pole on the railroad right of way over the reserved lands of the

defendant and by means of brackets nailed to some trees, at an elevation of some thirty feet above the surface of the ground. When this was done defendant interposed an objection, not only to the wire, but to the use and operation of the pipe line so installed, and not only cut the electric wire, but instituted before a justice a suit to recover damages, and obtained a judgment for $200.00, from which judgment plaintiff company appealed to the circuit court, and thereupon also instituted this suit to enjoin the prosecution of that suit, and also to enjoin defendant from further interference with its water line and power plant.

On final hearing, on bill, answer and cross-bill, with replication thereto, and depositions and proofs taken and filed in the cause, the court below pronounced the decree appealed from, among other things adjudging and decreeing that the preliminary injunction theretofore awarded on May 6, 1912, restraining defendant from interfering with plaintiff in the use and enjoyment of its said right of way for a water pipe line, and in the construction and maintenance of its electric wire from its power house as aforesaid, be wholly dissolved, and its bill dismissed: and agreeably to the prayer of the cross-bill, it was further decreed and ordered that plaintiff do within ninety days therefrom remove or cause to be removed from the premises, the electric wire, water pipe line, steam pipe line, track, pump and pump house, located on the reserved lands of the defendant Virginia Hatfield, and a further provision of said decree is: "That nothing herein contained shall be construed so as to in any manner prevent, hinder or delay the plaintiff in exercising the rights and privileges granted to it under the lease exhibited with plaintiff's bill herein by laying, operating and maintaining a pipe line across the reserved premises of the defendant, Virginia Hatfield, at and along the location of the old pipe line, as shown by the evidence of the witness G. S. Stone, and the map and plat filed therewith."

The first point in logical order made against the bill and the relief sought is, that it is bad on demurrer, in that it fails to allege facts showing irreparable injury and inadequate remedy at law. We do not think the bill bad on these

grounds, besides, the decree appealed from is predicated not only upon the bill, but upon the cross-bill answer and the pleadings thereon. The bill alleges interference by' the defendant with a vexatious suit for damages, and by her threats to obstruct plaintiff in the use of its pipe line and right of way, so as to effectually cut off its water supply, necessary for the operation of its plant, an allegation not specifically denied; and furthermore, that it is the defendant's intention to bring other actions at law to recover damages on account of said pipe line, and to continually harass and annoy plaintiff in relation thereto, another allegation not specifically answered. And in plaintiff's answer to defendant's cross-bill, it is specifically alleged, and we think it is fully supported by the weight and preponderance of the evidence, that the old pipe line referred to was never sufficient to supply said operations with water; that the object and purpose of said lease is to mine and ship coal from said premises; that such mining operations could not be successfully carried on and coal successfully mined at the point where the old power house was located on account of the dip or formation of the coal on the leased premises, wherefore it became necessary to move the power house and plant; that all attempts of plaintiff's predecessors to carry on mining at the old plant where originally located were fraught with disaster and bankruptcy; that the use of the old water line at the new location was impracticable, and that to be denied the use of the new water line would operate to practically destroy plaintiff's property and prevent it from successfully mining the coal under the lease, and performing its covenants with the lessor.

These allegations and proofs, we think, make a case for equitable interference by injunction. While the bill may not be as specific as it might have been in its allegations, we think it sets forth enough facts to show, owing to the character of the property, and the mining operations thereon, irreparable injury and inadequacy of legal remedy, bringing the case within the strictest rules of the authorities cited and relied upon, and within the rule of our cases of *Flaherty* v. *Fleming*, 58 W. Va. 669, and *Hershman* v. *Stafford, Id.* 459,

and other cases. These cases hold that injunction is the proper remedy to protect one in the enjoyment of a private right of way.

But the chief reliance of defendant is upon the general rule of law, that where there is a general grant or reservation of an easement or right of way, with right of election in the grantee or the one entitled to the right, to select such way or easement, and such election has been once made and the way or easement definitely located, the location thereof cannot be thereafter changed, without the consent and agreement of the parties, and that the location thus determined will have the same legal effect as if it had been fully described by the terms of the grant. Our case of *McKell* v. *Collins Colliery Co.*, 46 W. Va. 625, substantially affirms this rule, in a case where the reservation of a way was made by the lessor to be selected by him, for the benefit of a railroad right of way, that might thereafter be granted by him for the purpose of developing his other lands, the location to be made by the lessor before buildings and improvements were located on the leased premises, and where it was held, that the selection of the route was for the owner of the way, but that he could not make it in an unreasonable place so as to cause unnecessary injury to the lessee.

But is this rule, applicable generally to grants or reservations of rights of way when wholly disconnected with beneficial interests of the grantor, without exception? We cannot think so. In cases like the one at bar we think the grant or reservation must be construed as other contracts are construed, with reference to the character of the contract, its subject matter, the objects and purposes thereof, and the rights, covenants and obligations of the contracting parties thereunder. The intention of the parties is the polar star of construction. The decisions on this subject are fully collated in 3 Ency. Dig. Va. & W. Va. Rep. 395. According to one of our later decisions, the court should give the instrument that construction which will effectuate the real intent and meaning of the parties. *John* v. *Elkins*, 63 W. Va. 158, 59 S. E. 961. Another of our cases holds, that when a contract is made for the accomplishment of one main purpose,

as is usually the case, it is necessarily for the purpose of both parties, the thing upon which their minds met and are in perfect accord, and every provision of the instrument must be read in the light of such purpose. That the whole instrument must be considered in seeking its true meaning. *Carnegie Nat. Gas Co.* v. *South Penn Oil Co.,* 56 W. Va. 402, 49 S. E. 548.

In the light of these decisions let us look to other pertinent provisions of the lease. First, the lease covers some five hundred odd acres of land, with royalties reserved to the lessor of from nine to thirteen cents per ton of the coal mined, and with the minimum royalty reserved of not less than one thousand dollars per year. The lease runs for thirty years with provisions for forfeiture, and with right reserved in the lessor to buy the property of the lessee remaining on the premises at that time. There are covenants in the lease that the lessee will work and mine the coal upon the demised premises, according to approved and practical methods of mining, and a failure to pay the royalties provided, by the terms of the lease, will not only work a forfeiture of the lease itself, but of the property located thereon, to the lessor.

In other words the contract contemplates successful mining operations, and impliedly reasonable facilities and opportunities to that end. The selection of a right of way for the pipe line over the reservations, not one, but all the reservations, from Tug river to not one, but to all mining operations on said demised premises, is given to the lessee. Now with respect to this way for a pipe line over the ''reservations'' to the ''operations'' on these premises, can it be reasonably said that the parties intended that if upon investigation or experiment at one location the lessee should find it impossible to operate the property successfully and profitably to both parties, and perform his covenants with the lessor, and it should be found necessary to move elsewhere and locate another operation, he should be limited to the first pipe line and have no right to occupy the reserved land with another pipe line necessary to successfully mine the coal? We do not think such could have been the intent of the con-

tract. The supreme object of the lease was the successful operation of the land for coal. Its chief value consists in its coal. That such could not have been the intent of the parties with respect to this right of way is plainly manifest, not only from the character and subject matter of the contract, but from what they did upon the land.

Here we have the pertinent fact conceded, that the plaintiff in the very presence of the defendant rebuilt and relocated its plant, and laid and maintained this pipe line on the new location for two years, and mined the coal and paid royalties to the defendant, without the slightest interference or interruption by her, and, as the officers of the company say, without the slightest notice or protest to the contrary. Defendant's son and representative says he notified the officers of the company not to trespass on the land by laying the pipe lines, that he even gave them, or one of them, notice in writing, but no such notice or any copy of it was produced, and the fact of such written notice or of any notice is flatly denied by both officers to whom witness referred. If such notice was in fact given why did the defendant wait for two years before bringing action to assert her alleged rights, and until after plaintiff, as the evidence shows, had expended thousands of dollars in the new location of its mining plant and water way. We are disposed to hold upon the case thus made, and the weight of the testimony on this question, that defendant's long delay and acquiescence in the location of the new way amounted to a substantial agreement on her part to the new location, estopping her now to deny plaintiff's rights thereto, upon the principles enunciated in *Larned* v. *Larned,* 11 Met. 421; *Gage* v. *Pitts,* 8 Allen, 527; *Wynkoop* v. *Burger,* 12 Johns. 222; *Lawton* v. *Tison,* 12 Rich. 88; *Atwater* v. *Bodfish,* 11 Gray 150.

Another principle of construction applicable here we think is, that the conduct of the parties on the ground, and what they did in relation to the contract, amounted to a practical construction thereof, and is available to the court now in giving proper construction thereto.

For the foregoing reasons we are of opinion to reverse the decree below, and enter such decree here as we think the cir-

cuit court should have entered, agreeably to the prayer of the bill, perpetually enjoining the defendant, her agents, servants, employees and all other persons from interfering with the plaintiff in the use of its said pipe line and in the use and maintenance of its electric wires and power plant, and from the prosecution of her said action for damages against plaintiff now pending upon appeal from the judgment of the justice in the circuit court of Mingo county.

*Reversed and Rendered.*