# TENNESSEE PUBLIC SERVICE CO. v. MRS. KATHERINE PRICE.

Eastern Section.    April 16, 1932.

Petition for Certiorari denied by Supreme Court, October 15, 1932.

Cates, Smith & Long, of Knoxville, for appellant.

DeVault & Dawson, and L. M. G Baker, of Knoxville, for appellee.

PORTRUM, J.  This bill was filed to enjoin the defendant, Mrs. Klatherine Price, from molesting or interfering with the workmen of the complainant in the construction of a high-power transmission line over and above eight of her adjoining town lots in the suburb of the City of Knoxville.  The right to construct the line at the place is asserted under a conveyance executed by a predecessor in title of Mrs. Price, conveying an easement for rights-of-way purposes.  This deed was executed September 17, 1912, by J. A. McCampbell, the then owner of the land, to the Tennessee Power Company, its successors and assigns, and the complainant, Tennessee Public Service Company, is the successor of the grantee.  The

complainant sought a construction of this deed, and prayed for a decree defining its right under it; but in the event the construction was not favorable to the complainant, then it asserted the right to appropriate the land under its power of eminent domain. The defendant, in her answer, resisted the construction placed upon the deed by the complainant, and also denied the right of the complainant to condemn the land, under the condemnation statute, in the Chancery Court; she did not seek to have her damages ascertained and decreed her in this proceeding. An injunction was issued, and the complainant went into possession and constructed its power line pending this proceeding, and at the hearing the Chancellor construed the deed favorable to the defendant, with the effect that the company had no right, under the deed, to construct its line at the place it did. The Chancellor declined to permit complainant to prosecute a condemnation proceeding in his court and in this cause; the complainant prosecuted a special appeal to this court, calling in question only the Chancellor's construction of its deed.

The deed grants in general terms an indefinite easement, and the Court is called upon to construe this indefinite grant and make the easement definite. The pertinent portions of the deed (which is a printed form) reads:

". . . Do hereby grant, sell and convey unto the party of the second part, its successors and assigns, the perpetual right, privilege and easement to enter, and to erect, maintain, repair, rebuild, operate and control one or more lines of poles and towers, and wires or cables strung upon the same and from pole to pole and from tower to tower, for the transmission of electric current, with all necessary foundations, anchors, guys and braces, to properly support and protect the same, and also a telephone or telegraph line or lines with all necessary poles, cables, wires, appliances and fixtures for said lines, upon, over and across the land owned by the party of the first part in the Second Civil District of Knox County, Tennessee, bounded and described as follows:" (Here follows a description of the McCampbell tract of land. This description is filled in with pen and ink).

"This is not a conveyance of the fee in said land, but only of the rights, privileges and easements herein set forth.

"The exact location of said wires, cables, poles, towers, lines, etc., is to be selected by the party of the second part after its final survey has been completed.

"The party of the first part may cultivate the land under said line of wire in such a way as not to interfere with the rights and privileges hereby granted or the usages and pur-

poses herein set forth, and the party of the first part (except as above provided) shall not have any right to, or claim for damages of any nature against the party of the second part resulting from the exercise and enjoyment of the rights and privileges hereby granted.

"The party of the second part shall have the right to place or replace any of said poles or towers at any time it may desire."

There was never any formal selection made by the party of the second part of the bounds of the right-of-way after its final survey had been completed. However, there was then in existence—at the date of the execution of the deed—a blue print prepared by engineers in the City of New York detailing the manner and place of construction of power lines over this property, as well as other property over which this line as well as other lines ran into the City of Knoxville. This blue print defined a right-of-way of one hundred feet, and established a center line, dividing the right-of-way into two sections of fifty feet each. It designated a line of poles in the center of each of these sections. In 1913 the Tennessee Power Company constructed a power line over this property on the fifty feet lying to the south of the center line. And adjoining property was condemned for the width of one hundred feet conforming to this blue print (we assume it conformed to the blue print, the record shows a strip of one hundred feet of the adjoining property was condemned).

Since 1913 McCampbell sold his boundary of land, referring in his deed to this and another right-of-way. And his then deed conveyed the lands, which finally passed into the hands of the defendant, Mrs. Katherine Price, but her deed makes no reference to the right-of-way. At the time she purchased her portion was platted and laid off in eight town lots, fronting upon an established street called Upland Avenue; this street was thirty feet wide and the south boundary coincided with the center line appearing upon the blue print above referred to. The company claims fifty feet north of this center line, and Upland Avenue occupies thirty feet immediately north of the center line, and the defendant's lots abut upon this street and occupy the balance. Since 1913 and until the bringing of this suit, the company's power lines occupied the fifty-foot right-of-way to the south of the center line. This line carried a current of sixty-six thousand volts and served the mining community of Mascot. Since the construction of this line the Tennessee Power Company has been absorbed by the Tennessee Public Service Company, a corporation serving an interstate territory, and it has become necessary to reconstruct the transmission line to increase the carrying current to meet the demands of a wider territory, and increased local consumption.

In furtherance of this purpose the company began the construction of anther transmission line, located to the north of the old line, and placed towers in Upland Avenue, stringing its wires along this street and over the abutting lots of the defendant. It claims the right to do so under its deed hereinabove quoted. Since the construction of the new power line it has dismantled the old power line located on the fifty feet south of the aforementioned center line, and has practically abandoned the old right-of-way, if in fact it has not legally abandoned it since it is no longer of use to it. The reason the old right-of-way then in use was abandoned for the new power line and a new right-of-way established was for the temporary convenience of the company. That is, the company's witness stated the old line was left intact to serve Mascot and its territory while the new line was being constructed, and after the completion of the new line the wires of the old line were moved over and placed upon the towers of the new line.

We should have stated that the plat of this Addition, which is known as Midway Addition to Knoxville, was placed upon record in the Register's office of Knox County, Tennessee, in September, 1924.

The complainant insists that under a proper construction of its deed it is entitled to construct, at any time, one or more power lines (not a power line, and a telephone and telegraph line) over this described boundary of land; for the use of the word "lines" in the deed clearly indicate this right, and the right includes the privilege of abandoning an old line and the establishing of a new one at a different location.

That the blue print made by the company's engineers, in New York, in 1911, which definitely located the center line and planned two lines of poles with a right-of-way of fifty feet each, one to the north and the other to the south of the center line, was a selection of a definite easement by the company. And if so, it had title to fifty feet north of the center line, and it was in its right in constructing its power line upon its fifty-foot right-of-way lying to the north of the center line. This blue print was in existence at the date of the execution of the deed in September, 1912, it was not referred to, but "the exact location . . . is to be selected by the party of the second part after its final surveys have been completed." This provision of the deed indicated a purpose on the part of the company not to be bound by any "exact location" then in existence. This blue print has been filed away in the private files of the company, and was never brought to the attention of the grantor or any of his successors in title. Nor was there any final surveys made which could be used as the basis of a selection, and which may have been produced upon inquiry by a subse-

quent purchaser of this property. However, the company did by its use, select fifty feet to the south of this center line, which use was open and notice to all subsequent purchasers of the extent of the easement in use.

The extent of an indefinite easement as affected by the extent to which it has been used is fully treated in a note to the case of Winslow v. Vallejo, 5 L. R. A. (N. S.), p. 851. It is said:

"The reported cases are not entirely harmonious upon the question whether an easement granted in general terms may be extended by the grantee beyond the limits of the use first given to it, but the weight of authorities seem to be in line with Winslow v. Vallejo, holding that such an indefinite easement may not be enlarged after its limits have been defined by practical construction."

The rule stated in the Winslow case is the one in harmony with our Registration Statute, and it seems to us that public policy requires that these indefinite grants of easements be made certain as soon as possible, for: "It would be an incitement to litigation for the law to treat such an easement as a shifting one and would greatly depreciate the land on which it is charged and discourage its improvement." (Morehead v. Snyder, 31 Pa. St., 514).

"Where a right-of-way or other easement is granted by deed without fixed and definite limits the practical location and use for such way or easement by the grantee under his deed, acquiesced in by the grantor at the time of the grant and for a long time subject thereto operates as an assignment of the right and are deemed to be that which was intended to be conveyed by the deed and are the same in legal effect as if it had been fully described by the terms of the grant." Brannon v. Angier, 2 Allen, 129.

The rule is stated as follows in the case of Winslow v. Vallejo, 5 L. R. A. (N. S.), p. 854:

"The rule is well settled that where a grant of an easement is general as to the extent of the burden to be imposed on the servient estate, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed. . . .

"The appellant's plea for such construction is based largely on the fact that the conveyance throughout uses the words 'pipes' and 'mains' in the plural number, and that, therefore, the parties could not have intended to limit the city to a single pipe. But, while the city might, at the outset, have laid more than one pipe, the most that can be said regarding this language is that the grant is indefinite as to the number of pipes.

The city having elected to lay one, is bound by this selection. It might with equal force be urged that, inasmuch as there was no limitation on the size of the pipe to be laid, the defendant might at any time replace the ten inch pipe with one of twice or three times the diameter. Such rule is entirely inadmissible under the authorities above cited. . . .

"We think, therefore, that the construction given to the conveyance by the lower court was correct, and that the laying of the ten inch pipe, with the acquiescence of both parties, measured and limited the location and the extent of the easement. 'It is elementary that the location of an easement of this character shall be changed by either party without the other's consent, after it has once been finally established, whether by the express terms of the grant or by acts of the parties, tantamount to their effect.' "

We think this the rule applicable to the facts of this case, and that it is supported by the weight of authorities, and should be adopted as the rule in this State. As stated, it is in harmony with our Registration Statute, it defines the right and sets the issue at rest immediately, alienation and improvement is not discouraged, and an innocent purchaser is not deceived, for by inspecting the property the rights can be seen. The legal title to the property can be abstracted and approved with certainty.

In this case the Power Company shifted its lines from the right-of-way serving every necessity, so far as this record shows, to land designated and dedicated as a public street where it placed its towers and swung its wires, over the street and adjoining property, increasing the public hazard, and for no other purpose than to serve a temporary convenience. It did not acquire the right to do this under its deed. The defendant, by not appealing, has not questioned the company's right to acquire a new right-of-way, and this question is not before us. The decree of the lower court is affirmed.

Snodgrass and Thompson, JJ., concur.