**UNITED STATES v. 213.43 ACRES OF LAND, MORE OR LESS, IN FOSTER, STUTSMAN, BENSON & TOWNER COUNTIES, NORTH DAKOTA et al.**

**Civ. 2135, 2111.**

United States District Court
D. North Dakota, Southeastern Division.
July 30, 1952.

**VOGEL, District Judge.**

The United States of America, by virtue of the right of eminent domain, condemned an easement over lands owned by the parties, who will herein be referred to as defendants. The United States did not take title to the property but merely the right, privilege and easement to construct, operate and maintain an electric transmission line over strips of land 75 feet in width extending through the farms of the defendants. The parties were unable to agree between themselves as to the amount of compensation to which the defendants should be entitled as a result of the impressment of the easement upon their lands and the case was accordingly tried to a jury. It resulted in verdicts in favor of the various defendants for sums which equalled the estimates of value or damages testified to ·by witnesses in behalf of the United States. Witnesses in behalf of the various defendants testified to differences in market value before and after the impressment of the easements much greater than the figures given by the Government witnesses. A review of the record indicates that the jurors accepted the views of the Government witnesses completely and must therefore have disagreed with the views presented by the defendants' witnesses.

Each of the Government's witnesses testified that the market value of each farm or parcel of land was the same after the impressment of the easement as it was before. In other words, in the opinion of the Government witnesses, the taking of the easement by the Government did not affect the market value of the farms involved. Regardless of the expression of that opinion, the Government witnesses testified as to the value of the easements taken. They arrived at such valuation by figuring the number of acres involved in the easement, multiplying that by the value of the land per acre and then estimating the value of the easement at from 40% to 50% of such valuation.

Some of the defendants have now moved the Court for a new trial on five separate grounds. These will be discussed as they appear in the defendants' motion for new trial.

Harry Lashkowitz, Asst. U. S. Atty., of Fargo, N. D., for plaintiff.

Milton K. Higgins, of Higgins & Donahue, of Bismarck, N. D., for defendants.

"1. That the Court committed error in instructing the jury that if the jury found that the taking of the easements by the petitioner on the several tracts involved did not reduce the fair market value of the lands from which the said easements and right-of-ways therefor were taken, as contended by the Petitioner, the jury was at liberty to base the award of compensation as to each tract upon the formula urged by the Petitioner's witnesses, towit: upon a percentage of the acreage value of each of the said tracts, constituting the right of way, as the value of the easement and not as a reduction in fair market value."

In that regard, the Court instructed the jury as follows:

"In cases where the Government has taken an easement for the purpose of constructing, operating and maintaining an electric transmission line there may be two possible elements of damage to the owners. The first is measured by the market value of the easement or right taken. The second is the damage sustained by the landowner, if you find such to be the fact, to the remaining land or unit and caused by the taking.

"It is the theory of the landowners in this case that the market value of their farms has been depreciated because of the taking of the easement. Where that is true, the simplest way of arriving at the damage or compensation to which the owners are entitled is to ascertain the market value of the land before the easement has been taken and then the market value afterwards, and the difference between the two represents the damage or compensation to which the owners are entitled. I believe that all of the witnesses for the landowners have given you their opinion of the market value of the lands before the easement was taken. Then they have expressed their opinion regarding the damage or compensation by stating that the market value has been depreciated by a certain percentage or in some instances by giving a figure in dollars per acre as the depreciation.

"It is the theory of the Government that the market value of the lands with which we are here concerned has not been depreciated by reason of the taking of the easement but that, of course, the landowners should be paid for the value of the easement or right, and they have expressed their opinions with reference to the value of the easement in dollars."

The Court also instructed as follows:

"In determining the decrease in market value or damage caused by the taking of the easement or in determining the value of the easement itself, you may and should consider all testimony which would be given weight by a buyer and a seller in trying to fix market valuation. In determining the decrease in market value or the value of the easement or right, you may take into consideration every element of annoyance, inconvenience and disadvantage resulting from the construction and maintenance of the line which would influence an intending purchaser's estimate of the market value of such property, including annoyance, if any you find, which would result from the Government's perpetual right to enter upon the defendants' lands to maintain, repair or reconstruct the transmission line, the fact that weeds may grow around places where poles have been installed, and the fact that the installation of the poles may cause some inconvenience and expense in the farm operations—provided, of course, you believe that a willing purchaser and seller would take such matters into consideration in arriving at market value. You may also take into consideration in your deliberations the testimony with reference to the custom or plans of the Government with reference to the maintenance of the highline and its proposal to either sterilize the soil for a certain distance around each structure so that vegetation could

not grow thereon or, in lieu thereof, to cultivate around each structure so as to protect the structure from fire hazards, also the Government's plan or custom with reference to the construction of gates through any fences on the property concerned."

■ Counsel for the landowners took no exceptions to such instructions and accordingly is in no position to predicate error thereon. Regardless of that fact, the Court is of the opinion that the instructions given were proper and in no way misleading or a misstatement of the law.

"2. That the Court erred in admitting, over the objection of these defendants, testimony of the petitioner's witness, Waddell, declaring that the Petitioner would pay construction damage to each owner affected, in addition to the awards in this action."

■ No transcript of the testimony has been furnished to the Court in connection with the instant motion for new trial. Accordingly, the Court must rely upon its own notes and its memory of the testimony in the trial, which began March 28, 1952, several months ago. It is the Court's recollection that there was discussion in chambers out of the presence of the jury about the defendants' right to receive payment for damages to crops caused by the original construction of the transmission lines in question. It was the position of the petitioner's attorney that the Government had paid or would pay separately to the defendants for all damages caused by the construction company in erecting the highlines. Subsequently, the witness Waddell did testify without objection to the effect that the Government was paying for crop or construction damages separately from this action. It is the Court's recollection that counsel for the landowners made no objection whatsoever to such testimony.

■ Whatever be the fact, the record discloses that the attorneys for the respective parties have entered into stipulations regarding the payment of construction or crop damages on a number of the tracts involved and that counsel for the Government has made the statement in chambers during the trial of this action and subsequently to the trial in open court to the effect that wherever the owners could establish crop or construction damage the Government would be willing to pay therefor. The Court sees no ground for the granting of a new trial on this basis.

"3. That the pleadings are not sufficient upon which to base the awards and judgment in this case because the same are not certain and definite in that the petition asks for the right, outside the right of way in the tracts therein described, to affix anchors and guys as may be necessary without defining either the number or the location thereof."

It is the Court's recollection that testimony with respect to anchors and guy wires was brought out fully by counsel for the defendants and the Court sees no error on the assigned ground.

■ Grounds 4 and 5 will be considered together. They are as follows:

"4. That the evidence is entirely insufficient to sustain the verdicts, which are substantially identical with the Petitioner's contentions and testimony, because there is no competent evidence on behalf of the Petitioner that there was any reduction in market value of any of the tracts involved, the only legal basis for such awards, and the Petitioner's valuation witnesses all testifying that there was no reduction in fair market value whatever by the taking of any of the easements involved herein.

"5. That the Petitioner both by its counsel and its expert witnesses misled both the Court and the jury in contending in argument on the law in Chambers out of the presence of the jury, and in argument of testimony to the jury, that no reduction in fair market price whatever had occurred resulting from the taking of any of the said easements but that the jury had the right to base awards therefor on what was declared 'the value of the easement' and referred to by its counsel in Chambers as his 'new theory' and which is totally

without foundation or support in the law."

It seems to the Court that what the defendants are complaining about is that the Government witnesses were of the opinion that the market value of the defendants' farms was unaffected by the taking of the easement or right to construct a highline over them, and that if that theory were carried to the nth degree, the defendants would be entitled to nothing. The Court cannot agree with them. It is easy to understand that the market value of a farm would not be affected one way or another by the fact that the Government had installed a number of poles on the farm for the carrying of a highline and had taken the right to repair, maintain and reconstruct such line. Apparently the witnesses for the Government made such research and inquiry as was possible and found that farms upon which such easements had been impressed sold for just as much as farms having no such easements or highlines thereon, and that a buyer and a seller in an open market did not consider the highline of such detriment as to decrease its market value.

Irrespective of that conclusion, the Government did take something belonging to each one of the defendants. It took a right in property, not the property itself. The measurement of the value of that right is most difficult and at best can be little more than a guess. The use of the so-called formula whereby the Government witnesses figured the value of that right at 40% or 50% of the market value of the exact acreage involved does not to the Court seem at all improper under the difficult circumstances with which we deal. (It is the Court's recollection, and emphasis is put on the fact that it is mere recollection, that the difference between 40% and 50% depended upon whether the highline was over pasture or crop land.) Easements or rights to construct highlines across real property are not such rights as are bought and sold in the open market. Where the taking of them has not affected the market value of the farm, we must rely upon the opinions of expert witnesses who have been dealing in the purchasing of such rights from individuals. Very apparently the jurors agreed with the conclusions of the Government witnesses.

The Court finds no error which would justify the granting of the motion. It will be accordingly denied.

It will be so ordered.