UNITED STATES of America upon rela-
tion and for use of TENNESSEE
VALLEY AUTHORITY, Plaintiff,

v.

AN EASEMENT AND RIGHT OF WAY
150 FEET WIDE AND 582.4 FEET
LONG OVER CERTAIN LAND IN DE
KALB COUNTY, TENNESSEE, Odell
Starnes, et al., Defendants.

Civ. A. No. 313.

United States District Court
M. D. Tennessee,
Northeastern Division.

Feb. 24, 1960.

Charles J. McCarthy, Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn., for plaintiff.

McAllen Foutch, Smithville, Tenn., for defendants.

WILLIAM E. MILLER, District Judge.

This is a condemnation proceeding instituted by the Tennessee Valley Authority, hereinafter called "TVA," to condemn an easement and right of way for an electric power transmission line. The defendant landowners have filed a motion which seeks to require TVA to file a more definite statement of the easement rights taken. TVA contends that such easement rights are sufficiently described in the pleadings and that the defendants' motion should be denied.

The easement and right of way herein condemned provides for the erection and maintenance of a single line of poles or transmission line structures as follows:

"A permanent easement and right of way for electric power transmission purposes, consisting of the perpetual right to enter and to erect, maintain, repair, rebuild, operate and patrol one line of poles or transmission line structures with sufficient wires and cables for electric power circuits and telephone circuits, and all necessary appurtenances, in, on, over, or across said right of way, together with the right to clear said right of way and keep the same clear of brush, trees, buildings, and fire hazards, and to remove danger trees, if any, located beyond the limits of said right of way, the plaintiff to remain liable for any direct physical damage to the land, crops, fruit trees, fences and roads, resulting directly from the operations of the construction and maintenance forces of plaintiff in and about the erection and maintenance thereof, all upon, under, over, and across the following described land:"

This identical easement has been judicially reviewed and approved as not being vague or indefinite. United States ex rel. and for Use of Tennessee Valley Authority v. Russell, D.C.E.D.Tenn.1948, 87 F.Supp. 386; United States ex rel. Tennessee Valley Authority v. Puryear, D.C.W.D.Ky.1952, 105 F.Supp. 534; United States ex rel. and for Use of Tennessee Valley Authority v. Easterly, D.C. E.D.Tenn.1948, 87 F.Supp. 390; United States ex rel. and for Use of Tennessee Valley Authority v. Payne, D.C.E.D. Tenn.1948, 87 F.Supp. 393.

I am of the opinion that the defendants are not entitled to a more definite statement of the rights taken, and the defendants' motion is, therefore, denied.

At the hearing of the foregoing motion, the parties requested that the Court issue instructions to the Commissioners regarding certain legal questions which have arisen in this action. The Court feels that such a request is proper and would assist the parties in the presentation of their proof and aid the Commissioners in passing upon the evidence. The following instructions cover these questions.

1. *Plan and Profile Map of the Transmission Line.* A declaration of taking has been filed in this case which vests title to the easement in the Government by operation of law. 40 U.S.C.A. § 258a (1952). A copy of the declaration of taking has been filed in the Register's office of De Kalb County, the county in which the land lies. The description of the easement contained in the declaration of taking refers to a map which is also filed in the Register's office of De Kalb County. This map is an engineering drawing which shows, both in plan and profile, the land within the easement area and also the exact manner in which the transmission line will be built, including the number and height of the poles or towers, if any, to be placed on the easement, their exact location, the height of the conductors above the ground at all places along the right of way, and many other details of construction. It will be noted from the map in the present case that no poles or towers are to be erected upon this particular tract.

The Court is of the opinion that this map is incorporated by reference into the declaration of taking and constitutes a part of the description of the easement

rights taken in this proceeding. Howenstein Realty Corp. v. Richardson, 1943, 77 U.S.App.D.C. 299, 135 F.2d 803; Jefferis v. East Omaha Land Co., 1890, 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872; Kuhn v. Chesapeake & O. Ry., 4 Cir., 1941, 118 F.2d 400; Noonan v. Lee, 1862, 2 Black 499, 67 U.S. 499, 17 L.Ed. 278; United States v. Brewer-Elliott Oil & Gas Co., D.C.W.D.Okl.1918, 249 F. 609.

The Commissioners are therefore instructed that the foregoing map must be considered as a part of the description of the easement rights taken herein.

■ Even in the absence of a plan and profile map, the actual construction of the transmission line may, under the doctrine of "practical construction," fix and define the extent of the easement rights taken. Tennessee Public Service Co. v. Price, 1932, 16 Tenn.App. 58, 65 S.W.2d 879, certiorari denied Oct. 15, 1932; Tennessee Electric Power Co. v. Holt, 1926, 3 Tenn.App. 372; Winslow v. City of Vallejo, 1906, 148 Cal. 723, 84 P. 191, 5 L.R.A.,N.S., 851; City of Lynchburg v. Smith, 1936, 166 Va. 364, 186 S.E. 51; Snodgrass v. Crane, 1943, 57 Cal.App.2d 565, 134 P.2d 862; Harper v. Jones, Ohio Com.Pl.1946, 74 N.E.2d 397; Pennsylvania Water & Power Co. v. Reigart, 1937, 127 Pa.Super. 600, 193 A. 311; Mary Helen Coal Co. v. Hatfield, 1914, 75 W.Va. 148, 83 S.E. 292.

■ 2. *Future Changes in the Transmission Line.* Since, as indicated above, the construction rights have been fixed and defined by the plan and profile map and/or the actual construction of the transmission line, any substantial departure therefrom in the future would constitute an additional taking for which compensation must be paid at that time, but not in this proceeding. This rule is stated in 18 Am.Jur., Eminent Domain § 354 (1938), as follows:

"§ 354. *Plans and Specifications as Regards Nature of Improvement.* —It has been held in a number of cases that the plans, specifications, or stipulations of the condemner as to the nature of the improvements to

be constructed on or about the premises sought to be condemned, or the use to be made of such premises, are admissible in evidence to enable the jury to fix the damages of the owner of the premises with more precision. The petitioner may give them in evidence, or the defendant may have them produced on motion. * * * *any marked departure from the plans as shown in the profiles submitted, or from the stipulations in evidence, as to the character of the work to be done, will subject the condemner to an action for damages in favor of the landowner"* [emphasis added].

See also Raymond v. State, N.Y.Ct.Cl. 1955, 208 Misc. 43, 143 N.Y.S.2d 354; East Peoria Sanitary Dist. v. Toledo, P. & W. R. R., 1933, 353 Ill. 296, 187 N.E. 512, 89 A.L.R. 870. Therefore, the Commissioners in arriving at their estimate of just compensation in this proceeding should not consider the possibility of substantial changes in the transmission line at some future date.

■ 3. *The Measure of Damages.* The measure of damages when an easement is taken is the difference between the fair market value of the property before and after the taking. Olson v. United States, 1934, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236, affirming 8 Cir., 1933, 67 F.2d 24. The fee value of the land within the right of way is not allowed because, as stated in United States v. Cress, 1917, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746,

"If any substantial enjoyment of the land still remains to the owner, it may be treated as a partial instead of a total divesting of his property in the land. The taking by condemnation of an interest less than the fee is familiar in the law of eminent domain" [243 U.S. at pages 328–329, 37 S.Ct. at page 385].

See also United States v. 2,648.31 Acres of Land, etc., 4 Cir., 1955, 218 F.2d 518, which held that

" * * * where only an easement is taken, the fact that the fee re-

mains in the landowner must be taken into consideration, the entire fee or rental value not being recoverable" [at page 523].

■ It is also proper for the witnesses to arrive at their estimate of just compensation by valuing the area covered by the easement immediately before and after the taking plus incidental damages, if any, to the remainder of the property outside the easement area. United States v. 213.43 Acres of Land, etc., D.C.D.N.D.1952, 108 F.Supp. 446; United States v. 25.88 Acres of Land, etc., D.C.E.D.N.Y.1945, 62 F.Supp. 728; Puget Sound Power & Light Co. v. City of Puyallup, 9 Cir., 1931, 51 F.2d 688.

No construction or maintenance damages are to be assessed in this proceeding. The property damage clause of the easement provides for the plaintiff:

* * * to remain liable for any direct physical damage to the land, crops, fruit trees, fences and roads, resulting directly from the operations of the construction and maintenance forces of plaintiff in and about the erection and maintenance thereof * * *.

The validity of this provision was reviewed and sustained in United States ex rel. and for Use of Tennessee Valley Authority v. Russell, D.C.E.D.Tenn.1948, 87 F.Supp. 386; United States ex rel. and for Use of Tennessee Valley Authority v. Easterly, D.C.E.D.Tenn.1948, 87 F.Supp. 390; United States ex rel. and for Use of Tennessee Valley Authority v. Payne, D.C.E.D.Tenn.1948, 87 F.Supp. 393; United States ex rel. and for Use of Tennessee Valley Authority v. Susong, D.C.E.D.Tenn.1948, 87 F.Supp. 396.

■ 4. *Appurtenances.* This instruction concerns the meaning of the term "appurtenances" as used in the description of the easement. The Commissioners are instructed that this term means the necessary hardware and devices, which, together with the conductors and towers, are necessary to complete the transmission line, and includes such items as insulators, clamps, anchors, guys, static wires, bolts and nuts. It would not be reasonable or practical to require the Government to describe in the pleadings each of the items nor to specify exactly how many of each are to be used. United States v. 39.20 Acres of Land, etc., D.C.D.N.D.1955, 143 F.Supp. 623.

5. *Landowners' Rights in Easement Area.* This instruction concerns the rights remaining in the defendants and the manner in which they may use their land within the easement area.

The rights remaining in the landowner are very substantial where only a power line easement is taken. In 20 C.J., Eminent Domain § 585 (1920), it is said:

"The general rule, however, is that where the fee remains in the owner he may make any use of the property which is not inconsistent with its use for the purpose for which it was taken. So he has a right to work mines upon the land, provided he does it in such a manner as not to interfere with condemnor's use." See also 30 C.J.S. Eminent Domain § 451.

Likewise, in 20 C.J., Eminent Domain § 583 (1920), it is said:

"Where the condemnor takes only an easement which is an interest carved out of the owner's estate, the residue of the estate remains in the owner, with all the incidents of ownership which are not incompatible with the use to which it has been appropriated. So the title to trees and shrubbery, grass, buildings, underlying minerals or oil, and to a spring along the right of way, remain in the owner." See also 30 C.J.S. Eminent Domain § 450.

See also the Annotation in 46 A.L.R. 1463 (1927), wherein the general rule is said to be that:

" * * * the owner of a strip of land, who has granted a right of way thereon to a power company for its transmission lines, has the right to use such strip for any purpose which does not conflict with the

paramount rights of the power company, and subject to such rights he may cultivate the land, pass along and across it, and generally use it in any way which does not affect the rights of the company."

And see United States v. Burmeister, 10 Cir., 1949, 172 F.2d 478.

■ The defendants have the right to use their land for growing crops and fruit trees so long as they do not interfere with the paramount right of the Government to erect and maintain its line. If the fruit trees grow to such a height that they become a hazard to the line, the Government would have the right to keep them topped at a safe height. The landowner may grow peach trees on the right of way, cultivate them, and gather the fruit. Patterson Orchard Co. v. Southwest Arkansas Utilities Corp., 1929, 179 Ark. 1029, 18 S.W.2d 1028, 65 A.L.R. 1446.

Likewise, the right to fence and cross-fence the right of way remains in the landowners. Alabama Power Co. v. Sides, 1925, 212 Ala. 687, 103 So. 859; Aycock v. Houston Lighting & Power Co., Tex.Civ.App.1943, 175 S.W.2d 710; Arcola Sugar Mills Co. v. Houston Lighting & Power Co., Tex.Civ.App.1941, 153 S.W.2d 628; Langazo v. San Joaquin Light & Power Corp., 1939, 32 Cal.App. 2d 678, 90 P.2d 825.

■ 6. *Danger Trees.* The term "danger trees" has been defined as any tree which in falling could strike or come within 5 feet of the transmission line. United States ex rel. and for Use of Tennessee Valley Authority v. Russell, D.C.E.D.Tenn.1948, 87 F.Supp. 386. The Commissioners are instructed that the extent of the "danger tree" portion of the easement is to be determined by applying the foregoing definition to the physical facts of the particular case, such as the size of the trees near the right of way, the height of the conductors above the ground, the slope of the land, et cetera.

■ 7. *Ingress and Egress to Transmission Line Right of Way.* The Commissioners are instructed that the rights of the Government are limited to the 150-foot right of way condemned in this case except for the cutting of danger trees located beyond the right of way. The Government does not have the right of ingress and egress over other portions of defendants' property to reach the right of way. The Government, of course, has the power to acquire the right of ingress and egress over other portions of defendants' property if it so desires (United States v. 39.20 Acres of Land, etc., D.C.D.N.D.1955, 143 F.Supp. 623, but that right has not been taken in this case. Unless the specific right of ingress and egress is condemned, the Government does not obtain any such right. Banks v. School Directors, 1901, 194 Ill. 247, 62 N.E. 604. See also Pennsylvania Coal Co. v. Mahon, 1922, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322.

■ 8. *Torts Committed by Plaintiff.* The Commissioners are instructed that they are not to consider in this proceeding any torts which may have been committed in the past or might be committed in the future by the Government. Thus, if the Government's employees should leave the fences down and allow livestock to stray or should trespass beyond the limits of the right of way these would be separate torts for which the Government would be answerable in a separate suit, but not in this proceeding. United States v. Improved Premises, etc., D.C.S.D.N.Y.1944, 54 F.Supp. 469.