**UNITED STATES of America upon the Relation and for the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,**

v.

**An EASEMENT AND RIGHT OF WAY OVER TWO STRIPS OF LAND IN TRIGG COUNTY, KENTUCKY, Both 100 Feet Wide, One 7702 Feet Long, and the Other 1635 Feet Long,**

**C. C. Freeman and wife, Ruby Freeman, Defendants.**

**Civ. A. No. 1319.**

United States District Court
W. D. Kentucky,
at Paducah.

Jan. 28, 1966.

Charles J. McCarthy, Knoxville, Tenn., John C. Lovett, Benton, Ky., for plaintiff.

Ben B. Wright, Hopkinsville, Ky., William B. Byrd, Paducah, Ky., for defendants.

SHELBOURNE, Senior District Judge (sitting by designation).

March 13, 1963, the Tennessee Valley Authority instituted this condemnation proceeding against C. C. Freeman and Ruby Freeman, his wife, to acquire an easement over and across the defendants' farm in Trigg County, Kentucky. Commissioners were appointed to determine the amount of just compensation, a hearing was had, and an award of $5,275.00 was entered May 24, 1964, whereupon plaintiff filed exceptions to the award. A three-judge court was appointed to hear plaintiff's appeal from the award of the commissioners as provided for in Section 831x of Title 16, United States Code. By stipulation of counsel for the parties, it was agreed that one of the three judges hear the exceptions and make his determination upon the transcript of testimony heard by the commissioners, and the judge was requested to view the defendants' farm.

The action was filed to acquire an easement 9337 feet in length and 100 feet in width, containing 21.5 acres, over and across defendants' farm for the purpose of erecting thereon a pole line for transmission of high voltage electric power from Pee Dee Station in Christian County, Kentucky, to a station in Cadiz in Trigg County. According to the map and plat filed with the complaint, the line was to be built across defendants' farm upon nineteen poles of designated height with three guy wires attached to only one of the poles.

The defendants' farm contains a total acreage of 1958.5 acres lying north and south of Little River. The easement is over the 783-acre portion of the farm lying north of Little River, and C. C. Freeman testified before the commissioners that the defendants were estimating their damages as to the 783 acres only.

In August, 1965, the Court viewed the farm of the defendants, received briefs of counsel, and heard oral argument in November, 1965.

Upon the filing of the complaint, the plaintiff deposited $2,750.00 in the registry of the Court as its estimate of just

compensation to be paid the defendants for the easement imposed. At the hearing before the commissioners, plaintiff introduced five witnesses whose estimates of compensation due the defendants ranged from $2,050.00 to $2,720.00. The defendants' seven witnesses, including defendant C. C. Freeman, estimated just compensation in the following amounts: $5,200.00, $9,174.00, $10,000.00, $12,430.00, $12,500.00, $14,152.50, and $14,152.50.

Defendant C. C. Freeman testified that the fair market value of the 21.5 acres contained in the easement was reduced from $240.00 per acre to $50.00 per acre, or $4,085.00; that 480 acres in five fields over which the pole line extended was reduced in value $15.00 per acre, or $6,400.00, and that the remainder of the 783 acres was damaged. $5.00 per acre. He summarized all of his damage as amounting to at least the sum of $12,500.00 and stated, "My exact figures would be $12,437.50 to $12,600.00."

C. A. Woodall, whose estimate of defendants' damage was $5,200.00, valued defendants' farm at $391,600.00 before the imposition of the easement and $386,400.00 afterwards. He stated that in estimating the damage to the 21.5 acres in the easement at $240.00 per acre he considered damages to the land outside of the easement. Woodall testified that the entire farm was worth an average of $200.00 per acre, but that the land within the easement was some of the best land and in a very high state of cultivation and that he considered the damage by reason of the imposition of the easement to be 60% of the $400.00 per acre value he placed on the easement land. However, he said that in estimating the damage he included the inconvenience to the defendants of having to work around the nineteen poles and three guy wires, and had considered the facts that plaintiff could go in and out of the farm at any time of the year any time it desired and that defendants could never have buildings or other improvements except crops within the easement acreage. Mr. Woodall was asked whether or not in his opinion any of the remainder land was damaged in its market value by reason of the easement and he replied, "I considered that in my 60% damage figure that there was some damage but it was pretty difficult to put a value on it. I included it in this 60% figure, the fact that it was there and he could not use it in his farming operation, that he was limited in his use for farming operation." He further stated he assumed that the plaintiff would not be limited just to the easement but could go across other parts of the farm to get to it.

Smith Broadbent, Jr., considered only the 783 acres north of Little River which he valued at $200.00 per acre. He estimated the damage to the 21.5 acres comprising the easement at $25.00 per acre and the damage resulting to the remainder at $10.00 per acre for a total of $9,200.00. He also considered in his estimate that the plaintiff would have a perpetual right over defendants' lands. He said, "Then the perpetual right to get in and over your land certainly is a very important factor. You never know when they are coming in. They have a right to get on there and they have to go over this 793 acres that I was talking about."

Similar testimony varying in the detailed amounts as to the damage to defendants' farm was given by M. W. (Chuck) Thomas, Dell Freeman, Jr., Albert Jobe, and Walton Ezell. All of the defendants' witnesses apparently considered plaintiff as having the right to go back onto the easement to erect additional poles, lines, and other structures and to travel upon the defendants' lands within and without the boundaries of the easement in the construction and maintenance of the transmission line.

 The easement in this case is identical to the one involved in United States upon relation and for use of Tennessee Valley Authority v. An Easement and Right of Way, Etc., D.C.M.D.Tenn., 182 F.Supp. 899 (1960), wherein Judge William E. Miller instructed the commissioners appointed in a condemnation action as to the proper elements to be considered in the award of damages arising

out of easements for transmission lines. In his very careful analysis of applicable law, Judge Miller stated that the declaration of taking filed in condemnation proceedings vests title to the easement in the Government by operation of law. A map showing the exact manner in which the transmission line will be built, including the number and height of poles, their exact location, and other details, becomes a part of the declaration of taking. In the absence of a map or plan, the actual construction of a transmission line fixes and defines the extent of the easement rights taken. Any substantial departure from the rights fixed and defined by the profile map or plan or the actual construction of the transmission line constitutes an additional taking for which compensation must be paid at that time in another proceeding. Ingress and egress to the transmission line right of way is restricted to the portion of the defendant's property within the easement boundaries except for the cutting of danger trees within close proximity to the easement boundaries. If in the construction or maintenance of the easement right of way and transmission line the Government's employees leave fences down, allow livestock to stray, or trespass beyond the limits of the right of way, the Government is answerable in a separate suit for such damages. Abundant authorities are cited in Judge Miller's informative opinion in support of the above and other essential principles relative to condemnation of easements for transmission lines. See also United States ex rel T. V. A. v. Easement in Logan County, Ky., 6 Cir., 336 F.2d 76 (1964); Hicks v. United States, 6 Cir., 266 F.2d 515 (1959); Fain v. United States, 6 Cir., 145 F.2d 956 (1944).

Apprehension of injuries to person or property by the presence of power lines on the property may be taken into consideration insofar as the line affects the market value of the land. In the opinion of the Court the apprehension of such danger constitutes an element of damage.

On the record of the proceedings before the commissioners the Court determines that the damage to the 21.5 acres comprising the easement is $140.00 per acre and $1,200.00 to the remainder of the 783 acres lying north of Little River, and that the sum of $4,210.00 represents the difference in the fair and reasonable market value of that portion of the defendants' farm before and after the imposition of the easement. Judgment will be entered for the defendant in the amount of $4,210.00 with interest at the rate of 6% per annum from March 13, 1963, on that portion of the award in excess of $2,750.00, the amount deposited in the registry of the Court.