922 F.2d 841
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Forrest F. EVANS, Plaintiff-Appellee,
v.
TENNESSEE VALLEY AUTHORITY, Defendant-Appellant.
 No. 90-5058.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1991.
 
 Before KRUPANSKY, RALPH B. GUY, Jr. and SUHRHEINRICH, Circuit Judges.
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 Defendant, Tennessee Valley Authority (TVA), appeals from the grant of an injunction prohibiting it from cutting down trees adjacent to a transmission line easement it owns over plaintiff's property. Upon a review of the record, we conclude that the injunction is improper, and reverse.
 
 I.
 
 2
 In 1936, TVA acquired an electric power transmission line easement and a 75-foot wide right-of-way over property that is currently owned by the plaintiff, Forrest Evans. The easement gives TVA "the perpetual right to enter and to erect, maintain, repair, rebuild, operate and patrol one or more electric power transmission lines ... including the right to remove brush, timber, and danger trees, whether located on or off said right-of-way, interfering with the said lines...." (App. 35). A "danger tree" is any tree that would strike a transmission line structure or come within ten feet of a conductor if it were to fall toward the line.[1] (App. 31). It is TVA's policy to remove "danger trees" rather than trim them due to cost, time, and safety factors. An adjacent property owner may trim the trees himself and avoid the necessity of removal.
 
 
 3
 On March 14, 1989, a TVA representative contacted the plaintiff to inform him that a TVA contractor would soon be conducting clearing work in connection with the power line that was in the easement across plaintiff's property. That work was to include clearing brush and other growth from the right-of-way and the cutting of danger trees outside of the right-of-way. Plaintiff objected to TVA's cutting of any trees outside of the right-of-way and requested TVA to delay its clearing activities while he sought legal review of TVA's rights. In response to plaintiff's request, TVA agreed to delay any clearing work on his property until September 1989 and to notify him before any clearing took place on his property. Except for plaintiff's property, clearing work was performed in March 1989 along the entire line, including the cutting of danger trees. In response to plaintiff's objections and requests, TVA sent him five letters explaining TVA's position and informing Evans of TVA's work plans on his property. (App. 31-32). On September 14, 1989, TVA informed plaintiff that it intended to proceed with the clearing work during the week of October 2. On September 29, 1989, plaintiff filed this action.
 
 II.
 
 4
 Plaintiff, who did not become the owner of the land bordered by the easement until 1988, objects to cutting down the trees for aesthetic reasons. Although he argues that TVA has no right to remove trees outside the easement, this contention is clearly inconsistent with the express terms of the easement, and the district court so held. In fact, the district judge agreed with most of TVA's contention, except that in an obvious attempt at a little "fireside equity," he ordered TVA to trim only the trees on plaintiff's property to "the height or width ... necessary to ensure that the trees cannot fall within 5 feet of the power lines." (App. 20).
 
 
 5
 Although we are not unsympathetic to plaintiff's aesthetic concerns, we believe the district court erred in defining TVA's rights under the easement. We start with the clear language of the easement, which gives the right to "remove" trees. It is a tortured construction indeed that interprets the word "remove" to be limited to trimming. If the easement had spoken in terms of removing the "danger," the construction placed on the easement language arguably would be acceptable. It does not, however; the easement clearly conveys the right to remove trees.
 
 
 6
 The only authority cited by the district court for its interpretation of the easement language was United States ex rel. TVA v. An Easement and Right of Way, 182 F.Supp. 899 (M.D.Tenn.1960). We find this case to be inapposite. The cited case involved a condemnation proceeding instituted by TVA for the purpose of acquiring a transmission line easement. Such proceedings are (or at least were in 1960) conducted by commissioners, with the court exercising only supervisory control over the proceedings. The parties requested the court to give instructions to the commissioners on certain legal questions that arose. Most of the questions concerned the proper measure of damages for the partial taking involved. In order for the commissioners to determine the "before and after" value of the land, it was necessary that they clearly understood what rights the landowner would retain in the land subject to the easement. In discussing the fee holders rights, the court said, inter alia:
 
 
 7
 The defendants have the right to use their land for growing crops and fruit trees so long as they do not interfere with the paramount right of the Government to erect and maintain its line. If the fruit trees grow to such a height that they become a hazard to the line, the Government would have the right to keep them topped at a safe height. The landowner may grow peach trees on the right of way, cultivate them, and gather the fruit.
 
 
 8
 Id. at 904 (citation omitted).
 
 
 9
 It is clear in context the court was telling the commissioners that the landowner could grow fruit trees in the easement but that his right was not unfettered, and if the trees became a hazard, TVA could take action.[2] Although the court speaks of topping the trees, we view that language as illustrative rather than definitive. Clearly the court did not have before it the issue of the right of TVA to remove "danger trees."
 
 
 10
 TVA cites no case squarely on point, but does cite a number of cases that, by reasonable inference, may be said to stand for the proposition that the right to "remove" is equivalent to the right to cut down. One such case is Alabama Power Co. v. Ragland, 406 So.2d 363 (Ala.1981), which dealt with a damage action filed by a property owner after the power company cut down "danger trees" on his property. The issue in Ragland was whether the hewn trees were really "danger trees." In the course of its opinion, however, the Alabama Supreme Court makes it clear that when the easement speaks of the right to remove trees, this means the trees can be cut down.
 
 
 11
 We conclude by noting that the property owner can achieve the result he seeks here simply by trimming the trees himself. TVA gave him ample time to do so, since they informed him in March of the contemplated cutting and did not actually seek to cut until October.
 
 
 12
 The injunction is DISSOLVED, and the judgment in favor of the plaintiff is REVERSED.
 
 
 
 [1]
 Danger trees present potentially serious hazards for several reasons. Winds can cause them to sway into the line causing the lines to short out. Winds, lightning, ice, and tree cutting by landowners and others can cause trees to fall and physically damage a line or structure resulting in interruptions in service. Trees in close proximity to a transmission line also present a risk of "arcing" which could cause the tree itself to become electrified. Danger trees also present a serious risk to the line if they should catch fire. (App. 31-32)
 
 
 [2]
 It appears safe to take judicial notice that peach trees do not grow to a height that would, under normal conditions, present hazards to overhead transmission lines