SHANNON, Chief Judge.
The appellant, petitioner in the lower court, seeks review of a final judgment in a condemnation proceeding. In the proceeding the petitioner condemned an easement for a right-of-way 100 feet in width through certain lands owned by the appellees for the purpose of constructing electric power transmission lines thereon. Included in the amended petition seeking condemnation was the following paragraph:
“3. Outside of the boundaries of the tracts of land hereinabove described as PARCELS I-V, inclusive, but closely adjacent thereto, presently stand certain danger trees *, the “* In the electrical industry, a danger tree is defined as any tree in the proximity of a transmission line, which if felled, or upon falling, could fall within five feet of any conductor or other facility included within such transmission line.”
number, location and identifying exhibit of which are as follows, to-wit:
* * * * * *
Because of their proximity, these trees, if felled, might or could collide with or approach so nearly the wires, poles and associated facilities of the transmission line in question as to delay the initial erection of the line, interfere with its maintenance after construction and endanger life and property. For these reasons it is essential as an incident of the public use described in Paragraph 1 hereof that these trees, commonly referred to as ‘danger trees,’ be removed in advance of the commencement of the construction of the line so as to eliminate all peril therefrom in building and after-wards maintaining the line, also that *105 the Company have a continuing right to fell and remove any other trees (now growing or which may hereafter grow in the vicinity of the aforesaid right-of-way) which may attain the status of ‘danger trees’ as heretofore defined.”
While the present danger trees were identified by an exhibit, there was no identification nor any metes and bounds or other area description of the land on which they may grow contained in the petition.
There was a pre-trial conference, out of which an order was entered, saying, among other things:
“In this case petitioner is seeking an easement across the lands described in the petition for the purpose of erecting and maintaining a power line, and also as to certain of the parcels is seeking the right to cut down certain designated danger trees, and also the continuing right to cut down and remove danger trees which may hereafter grow in the vicinity of the easement right-of-way now being sought.
******
“9. Measure of Damages. It was determined by the court that the measure of damages to be used in this trial would be the fair and reasonable market value of the strip to be taken, less its reasonable market value for use and occupancy, subject to the easement, plus any damages to the remainder.”
The trial court some eight days subsequent to the pre-trial order struck from the amended petition all reference to future danger trees. The court also refused a proffer of testimony on the subject and likewise refused an instruction to the jury. The petitioner requested a charge on the question of damages, in which a portion read as follows:
“Just compensation for the appropriation of the rights-of-way involved in this case is a fair, reasonable market value of each strip to be taken, less its reasonable market value for use and occupancy subject .to the easement, plus any damage to the remainder * * * ”
It also had tendered to the court two other instructions on the question of damages, which were refused, and which it now insists were correct and the third charge quoted above is incorrect. The appellant has submitted eight points upon which it says the court committed reversible error, while one of the appellees has filed a cross-assignment of error.
The first question presented for our consideration is the instruction concerning the measure of just compensation. The petitioner has urged that the court in giving the instruction in reference to damages followed the so-called Kentucky rule, whereas, it says, that the Florida rule is different. But whether the Kentucky rule is different from the Florida rule is not important here. The appellant submitted this instruction to the court and it was given, notwithstanding the fact that the court had refused two other requested instructions of the petitioner, which, as the petitioner says, correctly stated the Florida rule. See Roe v. Henderson, 1939, 139 Fla. 386, 190 So. 618, where the court said:
“In this cause, however, the record discloses that the charge complained of was given at the request of the plaintiff in error and we must assume that it met the facts and conditions as they existed at the time. Otherwise a litigant may inject error into the record and take advantage of it which he should not be permitted to do.
“It is last contended that the charge as a whole is misleading and confusing, that it does not fully state the legal principles involved and that it tended to prejudice the defendant’s case.
“The charge as a whole has been' read and we do not find it amenable to the assault made on it. A large portion of it was requested by the *106 plaintiff in error and we do not see that he is in position to complain.”
As to taking present and future danger trees, there is, as petitioner says, very little case law in Florida. Judge Knott, writing for this court in Florida Power Corp. v. Wenzel, Fla.App.1959, 113 So.2d 747, sets out the prevailing law as follows:
“Three chapters of the Florida Statutes control the power of eminent domain, being Chapters 73, 74 and 361, F.S.A. In addition to the power to condemn land provided in F.S. Chapters 73 and 74, F.S.A., a public works corporation is granted authority to enter upon adjacent lands and take therefrom material necessary for the construction and repair of its works and improvements, upon making due compensation according to law, under the following provisions of F.S., § 361.01, F.S.A.:
“ ‘The president and directors of any corporation organized for the purpose of constructing, maintaining or operating public works, or their properly authorized agents, may enter upon any land, public or private, necessary to the business contemplated in the charter, and may appropriate the same, or may take from any land most convenient to their work, any timber, stone, earth or other material which may be necessary for the construction and the keeping in repair of its works and improvements upon making due compensation according to law to private owners.’ ”
After having set forth the facts in the case of Yadkin River Power Co. v. Wissler, 160 N.C. 269, 76 S.E. 267, 43 L.R.A.,N.S., 483, holding that the public utility company had the right to condemn the privilege of cutting down danger trees adjacent to the transmission line easement, it is further stated in the Wenzel case:
“A comparison of the quoted portions of the North Carolina statute with the provisions of Sec. 361.01, supra, shows them to be substantially similar. We agree with the conclusion of the North Carolina court and with the principle underlying the decisions to like effect in other states having somewhat similar statutes. See Monongahela Power Co. v. Shackleford, 137 W.Va. 441, 73 S.E.2d 809; West Virginia & Maryland Power Co. v. Raccoon Valley Coal Co., 93 W.Va. 505, 117 S.E. 891; Webster v. Susquehanna Pole Line Co., 112 Md. 416, 76 A. 254; Texas Electric Service Co. v. Perkins, Tex.Com.App., 23 S.W.2d 320.
“Holding as we do that the grant of authority under our Florida statutes is sufficient to allow the petitioner, upon payment of just compensation, to condemn the twenty danger trees on the land adjacent to the actual right-of-way taken, as identified on the map attached to the petition filed in the trial court, the judgment appealed from must be reversed on that issue.”
Insofar as the issues of the Wenzel case are concerned the law laid down in that case is confined to present danger trees which were identified on a map attached to the petition filed in the cause. But also in the opinion in the Wenzel case is this language:
“We note in passing that while the relief sought in the petition as to danger trees is confined to those 20 trees specifically designated and identified on the map attached thereto, the petitioner’s brief plainly implies that the license sought is meant to extend to trees which might grow to a dangerous height in the same general area in the future. We observe that if the petitioner expects to exercise a similar license as to other trees in the future based upon a judgment in the present case, the petition should be amended to show specifically the land area within which the license is to be exercised.”
Regardless of the character of this observation as dictum, it reaches the core *107 of the particular point to be decided in the instant case, viz., whether or not the petitioner’s description of future danger trees without a description of the specific land area for which the continuing license is sought is sufficient.
In studying the rights of the petitioner with reference to future danger trees in the vicinity of the condemned easement, the Court of Appeals of New York in Bell Telephone Co. of Buffalo v. Parker et al., 1907, 187 N.Y. 299, 79 N.E. 1008, had this to say:
“ * * * So in the case at bar, to legally condemn any portion of the defendants’ trees in the vicinage of the plaintiff’s telephone line the degree of proximity requisite to authorize the removal of any part of such trees must be definitely ascertained and described in the petition before the plaintiff should be allowed to go on with its condemnation proceedings.”
The petitioner cited the above case, but we do not find it helpful to its position. The language of the opinion certainly goes to the question of the fairness and justice of the petition and says:
“I think the description of the property sought to be condemned in this proceeding complies with the requirements of the statute in all respects save one, but that is not sufficiently specific in stating the extent of the right which the petitioner desires to acquire ‘to trim such trees as may be necessary to protect said line from interference.’ The command of the condemnation law is that the petition shall contain ‘a specific description of the property to be condemned, and its location, by metes and bounds, with reasonable certainty.’ * * * ”
The question has arisen in connection with the Tennessee Valley Authority’s power transmission lines. Most of these cases were decided by District Judge Taylor of the United States District Court for the Eastern District of Tennessee, and are: United States ex rel. and for Use of Tennessee Valley Authority v. Susong, May 26, 1948, D.C., 87 F.Supp. 396; United States ex rel. and for Use of Tennessee Valley Authority v. Payne, May 26, 1948, D.C., 87 F.Supp. 393; United States ex rel. and for Use of Tennessee Valley Authority v. Easterly, May 26, 1948, D.C., 87 F.Supp. 390; and United States ex rel. and for Use of Tennessee Valley Authority v. Russell, April 22, 1948, D.C., 87 F.Supp. 386.
Judge Taylor predicated his decision in each of these cases upon his decision in the Russell case decided on April 22, 1948. In that case it is said:
“Among the rights sought to be condemned is the following: ‘ * * * and to cut and remove any and all trees now or hereafter growing, beyond the limits of said right of way, any part of which would in falling directly toward the line strike any structure or conductor of said line or come within five (5) feet of any conductor.’
* * * * * *
“Petitioner here has made choices in two sets of alternatives. As to the tree-cutting privilege, the alternatives were between taking an easement with the tree-cutting privilege, coupled with liability for future cuttings, and the taking of an easement with the tree-cutting privilege, without liability for future cuttings. Petitioner chose the last of the two. As to the re-entry right, the alternatives were between taking an easement with the re-entry privilege, coupled with immunity from future liability, and the taking of an easement with the re-entry privilege, coupled with liability for future reentry damages. Petitioner chose the last of these two. In one situation, it has deemed it necessary to take a right coupled with immunity, and in the other situation, to take a right coupled with a potential liability. Subject to *108 the requirement of just compensation, which may vary as the choice varies, the nature and extent of the taking are for legislative, or administrative, and not judicial determination. * * * ”
When the whole opinion is read it is seen that the petitioner is not only allowed to cut future danger trees but also it is not limited to its land area description in the petition. It is so also in the other three Tennessee Valley Authority cases.
There is another United States District Court opinion in 182 F.Supp. 899, which follows the above cited cases. This is the case of United States of America ex rel. Tennessee Valley Authority v. An Easement and Right of Way, etc., 1960, D.C., 182 F.Supp. 899, opinion by Judge Miller, wherein the petition for condemnation states in part:
“ * * * with the right to clear said right of way and keep the same clear of brush, trees, buildings, and fire hazards, and to remove danger trees, if any, located beyond the limits of said right of way, * *
It will be seen that the above petition did not particularly seek the right to remove any future danger trees. However, Judge Miller decided this case itpon the authority of the earlier T.V.A. cases.
These decisions of the federal district court are, however, only persuasive, and we do not find them applicable herein for reasons we shall presently discuss.
The continuing servitude sought by the petitioner in the instant case is of such a nature as to deprive the landowner of the use of his land only to the extent that such would interfere with petitioner’s safe and efficient utilization of the right-of-way. Petitioner maintains that it is impracticable for it to describe with particularity the area of land adjacent to its 100 foot right-of-way wherein trees might in the future grow to such a height as to endanger its transmission lines and equipment used in conjunction therewith. We believe, however, that the language quoted in Florida Power Corporation v. Wenzel, supra, to the effect that the petition should show Specifically the land area within which the license is to be exercised, is proper. Sec. 73.01(2), Fla.Stat., F.S.A., provides that the petition shall set forth “[a] description, sufficient for the identification thereof, of the property sought to be acquired. The petitioners may join in the same action all properties involved in a planned project whether in the same or different ownership or whether or not the property is sought for the same use.” (Emphasis added). Due process requires no less than such a description as a safeguard to the rights of all concerned.
By this opinion we do not hold that the petitioner can never condemn future danger trees, but we do hold that at such time as the right to enter for the purpose of removing such future danger trees is sought a legal description of the particular land to which such easement will apply must be filed.
All other points-on-appeal have been considered as well as the cross-assignment of Appellees Von Paulsen and no reversible error has been made to appear.
Affirmed.
ALLEN, J., and MORROW, R. O., Associate Judge, concur.